THE CITY OF CHICAGO, Plaintiff and Counterdefendant-Appellee, v. MARSHALL KORSHAK *et al.*, Defendants and Counterplaintiffs-Appellees (Martin Ryan *et al.*, Intervenors-Appellants).

First District (3rd Division)   No. 1—89—3451

Opinion filed November 28, 1990.—Rehearing denied January 15, 1991.

Clinton A. Krislov, John J. Lowrey, and Sidney Z. Karasik, all of Chicago, for appellants.

Kelly R. Welsh, Corporation Counsel, of Chicago (Larence Rosenthal, Ruth M. Moscovitch, and Lynn Mitchell, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Kevin M. Forde and Katrina Veerhusen, both of Kevin M. Forde, Ltd., of Chicago, for appellee Policemen's Annuity & Benefit Fund.

William A. Marovitz, of Marovitz & Edelstein, and Frederick P. Heiss, of Boyle & Heiss, Ltd., both of Chicago, for appellees Laborers' & Retirement Board Employees' Annuity & Benefit Fund and Municipal Employees' Officers' & Officials' Annuity & Benefit Fund.

Martin J. Burns, of Jacobs, Burns, Sugarman & Orlove, of Chicago, for appellee Firemen's Annuity & Benefit Fund.

JUSTICE RIZZI delivered the opinion of the court:

Intervenors-appellants Martin Ryan *et al.* (Intervenors), class representatives of the participants in the City of Chicago's (City's) annuitant health care program, appeal from an order of the trial court which approved the class action settlement agreement proposed by the City and the trustees of four City pension funds (the Funds). We affirm.

The City of Chicago's retired employees are covered by four annuity and benefit funds: the Policemen's Annuity and Benefit Fund, the Fireman's Annuity and Benefit Fund, Municipal Employees' Officers' and Official's Annuity Fund and the Laborers' and Retirement Board Employees' Annuity and Benefit Fund. Beginning in 1964, the Funds' annuitants were allowed to participate in a medical benefits plan sponsored by the City under the same coverage and premium rates offered to current City employees. In 1965, the City began paying the cost of its active employees' medical insurance coverage and, in 1971, the City paid the cost of its employees' dependents' medical insurance coverage. The medical insurance for active employees, annuitants and dependents was provided through traditional insurance policies until 1975 when the City became self-insured. The City then paid Blue Cross, Bankers Life and Home Pharmacy insurance companies to administer its insurance program.

When the annuitants first joined the City's plan in 1964, the premium rate charged for an individual annuitant under age 65 was $8.04 per month. The premiums were periodically increased. By 1977, when the coverage was self-insured, the monthly rate charged by the City for a single annuitant under age 65 had increased to $38.26.

Prior to 1980, the annuitant beneficiaries paid the entire cost of their health care. That year, the City contributed $2 million toward the cost of the beneficiaries' health insurance. The payment constituted 31% of the total cost of health care benefits. The City increased the rates charged the annuitants effective April 1982. Since 1982, Medicare-qualified annuitants have paid $21 per month while others have paid $55 per month for health care benefits. The rates have not risen since 1982 and, as a result, the City has had to cover the escalating costs of the pensioners' policies. By 1989, the City was paying 77% of the health care costs. Prior to 1983, the Funds did not pay any of the cost of annuitants' health benefits. In October 1987, the City informed the Funds of its intention to cease payment of annuitants' health care benefit costs as of December 31, 1987.

The dispute in this case arises out of the subsequent complaint for *mandamus*, restitution and other relief filed in 1987 by the City

against trustees of the Funds to recover payments made for a portion of pension fund beneficiaries' health care costs. State law specifies the monthly amounts the City is to raise through its tax levy for the cost of beneficiaries' health care and the rest of the cost is paid by the beneficiaries who want coverage. The City's lawsuit sought both an order declaring how much the City must pay and recovery of prior "illegal" payments. The Funds' trustees responded to the City's suit by filing a motion to dismiss and a counterclaim on behalf of their annuitants to prevent the City from terminating the annuitants' coverage under the City's plan and to compel the City to continue paying for a portion of the coverage. Certain individual annuitants, who are the appellants in this matter, were granted leave to intervene in the trial court proceedings.

Following a hearing, the trial court dismissed the City's complaint with prejudice, finding that the Funds had no obligation to reimburse the City for the health care benefits received by the annuitants since 1980. The claims asserted in the Funds' counterclaims were the subject of a June 1988 bench trial. Before the trial court issued its decision, however, the City and the Funds agreed to support legislation amending the Pension Code and to enter into a settlement agreement consistent with the legislation. The terms of the settlement agreement provide that the City pay at least 50% of the cost of the health care claims of annuitants and dependants who participate in the City's plan. The legislation further provides that the City's obligation to continue coverage under the legislation will terminate at the end of 1997, but that, in the event that some permanent solution is not achieved by 1998, the annuitants will be permitted to assert whatever legal rights they had at the time the trial of the counterclaims commenced.

Intervenors filed a motion for summary judgment asking the trial court to permanently enjoin the City from changing the terms of the health care benefits provided to annuitants. The trial court held a fairness hearing on November 27, 1989, wherein it approved the settlement and thus decided not to rule on the Intervenors' motion for summary judgment. This appeal followed. On February 14, 1990, this court granted the Intervenors' motion to stay pending appeal implementation of the trial court's order which approved the settlement.

■ On appeal, the Intervenors contend that the trial court abused its discretion in approving the class action settlement. We disagree. The procedural and substantive standards governing class action settlement hearings are well established. On appeal, the trial court's decision may be reversed only on a clear showing that the trial court

was guilty of an abuse of discretion. (*People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 316, 335 N.E.2d 448, 455.) A trial court's approval of a settlement should not be overturned on appeal unless, taken as a whole, the settlement appears on its face so unfair as to preclude judicial approval. *Gowdey v. Commonwealth Edison Co.* (1976), 37 Ill. App. 3d 140, 149-50, 345 N.E.2d 785, 793.

■■ ■ The determination of whether a settlement is fair, reasonable and adequate requires the examination of an amalgam of factors, the principle factor is a balancing or comparison of the terms of the compromise with the likely rewards of litigation, as well as a determination of whether the settlement is in the best interests of all those who will be affected by it. (*Wilcox*, 61 Ill. 2d at 316.) Although review of class action settlements necessarily proceeds on a case-by-case basis, certain factors have been consistently identified as relevant to the fairness determination. Among the factors which the trial court should consider in judging the fairness of the proposal are the following:

> (1) the strength of the case for plaintiffs on the merits, balanced against the money or other relief offered in settlement;
> (2) the defendant's ability to pay;
> (3) the complexity, length and expense of further litigation;
> (4) the amount of opposition to the settlement;
> (5) the presence of collusion in reaching a settlement;
> (6) the reaction of members of the class to the settlement;
> (7) the opinion of competent counsel; and
> (8) the stage of proceedings and the amount of discovery completed.

See *Armstrong v. Board of School Directors* (7th Cir. 1980), 616 F.2d 305, 314.

■ We will review the trial court's approval of the settlement agreement using the above-noted factors. The first factor is the strength of the case versus relief offered in settlement. In assessing the fairness, reasonableness and adequacy of the settlement, the trial court balanced the amount of the proposed settlement and the immediacy of a prospective recovery for class members against the continuing risks of litigation. The trial court found that the risks in the case primarily involve the establishment of the City's liability for the cost of its retired employees' health benefits. The settlement eliminates the risk that the Funds and their annuitants will not be successful in establishing liability. Throughout the litigation, the City maintained the position that it was legally entitled to terminate both the annui-

tants' participation in the City's health benefits plan as well as its payment of any of the costs for those benefits.

Here, by contrast to the usual class action settlement, the Funds and annuitants have not sued for money damages and are not settling for some percentage of their actual damages. Instead, the proposed agreement eliminates the risk that the annuitants would have to pay the entire cost of their health benefits and the further and more serious risk that they may not be able to obtain coverage at any price. The agreement eliminates these risks by committing the City to pay at least 50% of the cost of the annuitants' health benefits through the end of 1997. At the conclusion of that period, if no permanent solution has been found, the parties will return to the legal postures they were in in June of 1988, before this compromise was negotiated.

The second factor is the defendant's ability to pay. The trial court found that under the circumstances of this case, this factor was not relevant. We agree.

The third factor is the complexity, length and expense of further litigation. On this point, the court found that this case presented the kind of dispute where a fair and reasonable settlement would be beneficial to all parties concerned and to the public interest. If the agreement were not approved, the litigation would return to the posture it was in in June of 1988 when the parties reached a settlement in principle. During the post-trial stage and probable appeal process, the annuitants' health benefits would remain in limbo, both as to coverage and liability for payment of the cost of coverage. This settlement resolves these issues in the best interests of both the class and the public.

The fourth factor is the amount of opposition to the settlement. This factor and the sixth factor are closely related. We will therefore discuss the fourth factor in conjunction with our discussion of the sixth factor. The fifth factor is the presence of collusion. In this regard, the trial court noted that it had the opportunity to acquaint itself fully with the facts and law of the case and was aware of the procedural aspects of the litigation. The trial court found that the case was hard fought by both counsel for the City and the Funds and that settlement was reached after vigorously contested litigation and hard bargaining. The trial court therefore concluded that there was no collusion in conjunction with either the litigation or bargaining which preceded the agreement. We agree.

The sixth factor is the reaction of members of the class to the settlement. The trial court balanced the objections of class members against the strengths and weaknesses of the case and the risks of liti-

gation and found the settlement agreement to be manifestly reasonable. Several annuitants complained that as a result of the settlement they would be obligated to pay unaffordable premiums. Although the premiums will substantially increase under the plan, the City is obligated to pay at least 50% of the total $340 actual cost per month for annuitant coverage. Because this settlement eliminates the possibility that the annuitants will not prevail on the merits and obligates the City to pay at least 50% of the annuitants' health benefits coverage until the end of 1997, it is in the best interests of all parties. Furthermore, in oral argument before this court, counsel for the City indicated that the City has promulgated a municipal ordinance which obligates it to pay 62.5% of annuitants' health care costs.

The seventh factor is the opinion of competent counsel. The trial court did not separately consider this point, but noted within the context of discussing the arm's length negotiations which led to settlement that counsel for both sides reached agreement only after hard bargaining. The trial court therefore relied on the opinion of competent trial counsel who approved the agreement.

The eighth factor is the state of proceedings and the amount of discovery completed. The stage of proceedings at which settlement is reached is important because it indicates the extent to which the trial court and counsel were able to evaluate the merits of the case and assess the reasonableness of the settlement. The proposed settlement in this case was entered into after all discovery was completed and a trial had been conducted on the pension funds' counterclaim. We therefore conclude that the trial court and the parties had all the information necessary to evaluate the merits of the parties' legal positions and the probable course of future litigation.

Under the circumstances, reviewing the facts in their entirety in the light most favorable to the settlement, we find the agreement to be both reasonable and in the best interests of all concerned parties. In reaching this conclusion, we defer to the trial court's decision in this matter. This deference is accorded the trial court because of its familiarity with the litigants, the history of the litigation and the merits of the substantive claims asserted. See *Armstrong*, 616 F.2d at 315.

Intervenors raised numerous additional challenges to the settlement agreement. The Intervenors claim that (1) notice to the participant class was defective and confusing; (2) the class representatives were prevented from communicating to the class; (3) the court erroneously precluded intervention by entities having vital interests pertinent to the determination of fairness; and (4) the settlement is unfair

and should be rejected. Upon review, however, we find the Intervenors' challenges to be without merit.

■■■ On the issue of notice, each of the approximately 16,000 annuitants and widows of annuitants who participate in the City health benefits plan were given notice of the proposed settlement and fairness hearing. The notice informed the class members of their right to appear at the fairness hearing and to enter appearances through their own counsel, if desired. The notice, which fully and explicitly explained the litigation, the proposed settlement and the rights and options of the class members complied with due process. Further, although the trial court denied the Intervenors' request that they be permitted to include, with the court-approved notice, a statement explaining their opposition to the settlement, they failed to appeal from that order. Accordingly, review of that order is waived. In addition, Intervenors failed to appeal from the trial court's order denying intervention to the Retired Chicago Police Association, therefore precluding review of that order. See 107 Ill. 2d R. 301; *Lewanski v. Lewanski* (1978), 59 Ill. App. 3d 805, 815, 375 N.E.2d 961, 968-69.

In sum, the Intervenors' challenges to the settlement agreement are without merit. Further, our independent review of the settlement agreement using the *Armstrong* criteria for approval of class action settlements leads us to conclude that the trial court did not abuse its discretion in approving the agreement.

Accordingly, the judgment order of the trial court which approved the settlement agreement in this matter is affirmed.

Affirmed.

CERDA, P.J., and WHITE, J., concur.