G M A C MORTGAGE CORPORATION OF PENNSYLVANIA, Plaintiff and Counterdefendant-Appellee, v. WALTER L. STAPLETON *et al.*, Defendants and Counterclaimants-Appellees (Shirley B. Harding *et al.*, Objectors-Appellants).

First District (1st Division)   No. 1—91—3495

Opinion filed October 13, 1992.

Kenneth Hanson and William J. Stevens, both of Chicago (Irving Morris, Karen L. Morris, and G. Robert Blakely, of counsel), for appellants.

Kirkland & Ellis, of Chicago (Chaim T. Kiffel and Sallie G. Smylie, of counsel), for appellee G M A C Mortgage Corporation of Pennsylvania.

Lawrence Walner & Associates, Ltd., and Law Offices of Daniel A. Edelman, both of Chicago (Lawrence Walner and Daniel A. Edelman, of counsel), for other appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Class members objectors-appellants Shirley B. Harding and Barry Ruder (Objectors) appeal from a final judgment of the circuit court of Cook County which approved a class action settlement agreement proposed by plaintiff and counterdefendant-appellee G M A C Mortgage Corporation of Pennsylvania (GMACM) and defendant and counterclaimant-appellee Walter L. Stapleton (Stapleton). The class action

suit, brought by Stapleton on behalf of himself and all others similarly situated, charged GMACM with collecting excessive escrow fees from Stapleton and class members in violation of the escrow provisions of Stapleton's and each class member's mortgage. The sole issue on appeal is whether the circuit court abused its discretion in approving the class action settlement. We affirm.

GMACM is a wholly owned subsidiary of General Motors Acceptance Corporation and a Pennsylvania corporation. Stapleton is an Illinois resident and Objectors are nonresidents. The Objectors are also plaintiffs in a separate class action suit against GMACM. Harding v. G M A C Mortgage Corp. (E.D. Pa.), No. 91—15119 (filed March 8, 1991).

As one of the country's largest mortgage service companies, GMACM lends money to mortgagors and then packages the mortgages for resale to investors. GMACM services the mortgages during their existence by collecting the mortgagors' monthly payments of principal, interest and escrow monies, which GMACM uses to pay the mortgagors' taxes and insurance on the mortgaged property. The mortgages GMACM services are printed on standard form contracts authored by the Federal National Mortgage Association (FNMA), the Federal Home Loan Mortgage Corporation (FHLMC), the Federal Housing Administration (FHA), and the Veterans Administration (VA).

In November 1990, GMACM filed a foreclosure action against Stapleton and his brother, alleging that he was in default on a promissory note for which a GMACM mortgage served as security. In responding to the foreclosure suit, Stapleton asserted a class action counterclaim which charged GMACM with collecting an amount of escrow money which exceeded the permissible amounts under the class members' respective standard form contracts. Asserting breach of contract and statutory consumer fraud claims (*e.g.*, Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*)), the class sought equitable and monetary relief, penalties and attorney fees.

The class members involved in this suit consist of approximately 590,000 customers of GMACM, with 388,000 members having current mortgages with GMACM, and 202,000 members having mortgages which have been closed. Of the 388,000 current mortgages, 39% are FHA mortgages, 19% are VA mortgages and 42% are FNMA or FHLMC mortgages. The mortgages of Stapleton and Objector Harding are the standard FHA form while that of Objector Ruder is the FNMA/FHLMC form.

The standard FHA form, which substantially mirrors the VA form, provided in part that the monthly escrow payment shall be:

"[a] sum equal to \*\*\* the taxes and special assessments next due on the premises covered by this mortgage, plus the premiums that will next become due and payable on policies of fire and other hazard insurance on the premises covered hereby (all as estimated by the Mortgagee) less all sums already paid therefore *divided by the number of months to elapse before one month prior to the date when such [items] \*\*\* become delinquent.*" (Emphasis added.)

The standard FNMA/FHLMC mortgage provided:

"[b]orrower shall pay to the Lender on the day monthly payments are due under the Note, \*\*\* a sum [Funds] equal to one twelfth of: [escrow items]. Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

\* \* \*

If the amount of the Funds held by the Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount *required to pay the escrow items when due,* the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds." (Emphasis added.)

The dispute in this case, at its heart, is nothing more than attributing the proper interpretation to the above provisions. To understand more specifically what this dispute is about, however, it is necessary to comprehend the workings of an escrow account.

Generally, a mortgage escrow account is designed to ensure that customer bills are timely paid by the mortgage service company. To this end, a mortgage servicing company performs an annual analysis of each customer's escrow requirements for the following 12 months. Using past bills, the servicing company will estimate the amount of money which will be needed for each bill over the next 12 months, calculate the number of months to elapse before each bill comes due, and then set a level monthly escrow payment so that sufficient funds will be available to pay each bill. A one- or two-month cushion may be employed to insure timely payment and guard against inflationary increases. Where a mortgagor has only one bill to pay during the year, which is rare, the calculations are relatively simple. Where, however, bills of varying amounts are due at different times, which is the usual case, escrow calculations are more complex. The present suit calls

into question two accounting practices which mortgage servicers employ in these more complex escrow scenarios.

The first accounting practice is called individual item analysis. Under this analysis, the mortgage servicing company establishes separate subaccounts for each individual escrow item (*i.e.*, city taxes, county taxes, insurance, etc.). Significantly, the amount of money in the aggregate escrow account is not a factor under this analysis and, thus, substantial monies in separate subaccounts may exist at the time full payment of another subaccount is made. In addition to the monies in these other subaccounts, a given subaccount may contain the one- or two-month reserve or cushion discussed above. Generally, individual item analysis requires more funds in an escrow account than if the escrow account were maintained without subaccounts.

The second accounting practice employs an aggregate override to limit excessive escrow reserves. Under this method, the mortgage servicing company annually estimates the escrow account's aggregate annual low point during the upcoming 12-month period. This figure is then related to the monthly escrow payment. When a two-month aggregate override is employed, the mortgagor receives a credit or refund for any amount by which the low point in the aggregate escrow account exceeds one-sixth (two months) of the total amounts expected to be paid during the next 12 months from the escrow account. Generally, an escrow account serviced with an aggregate override employing a two-month cushion requires less funds than an account maintained on an individual item basis with a one-month cushion.

Although the Objectors claim otherwise, GMACM contends, and Stapleton does not dispute, that GMACM employs individual item analysis with a one-month cushion in servicing its mortgagors' accounts. GMACM submits to support its assertion the affidavit of its chief financial officer, Frederick A. Henderson, who states that GMACM targets a one-month cushion for each subaccount, allowing GMACM to collect the full amount due for each escrow item one month before GMACM must pay that item. The Objectors have submitted printouts of their individual subaccounts which they claim show that GMACM exceeded one-month cushions on a number of occasions and, in fact, borrowed from one subaccount to correct a deficiency in another subaccount.

Aside from the issue of whether GMACM "in fact" practices individual item analysis with a one-month cushion, Stapleton and the Objectors assert that individual item analysis with a one-month cushion is, as an accounting practice, at odds with the language of the standard form contracts, and violates the Real Estate Settlement Proce-

dures Act (RESPA) of 1974, 12 U.S.C. §2601 (1988) *et seq.*, which imposes a two-month ceiling on the collection of escrow money. GMACM responds that individual item analysis with a one-month cushion is consistent with both the standard form contracts and RESPA. GMACM cites a wide variety of authority that RESPA permits the accounting practices it employs.

To resolve the instant class action suit, Stapleton, individually and as class representative, entered with GMACM a proposed settlement agreement on April 29, 1991. Under the terms of the proposed settlement, in exchange for the class members' release of GMACM as to any and all claims, GMACM agreed to do the following.

First, as to the estimated 388,000 current mortgages, GMACM would employ a two-month annual aggregate override to avoid the collection of excess reserves. Significantly, this portion of the settlement agreement incorporated prospectively any lower ceiling which might be achieved as a result of a similar suit pending in New York. In that suit, 12 Attorney Generals of various States sued GMACM over their accounting practices. People of the State of New York v. G M A C Mortgage Corp. (S.D.N.Y), No. 90—Civ—7924 (the AG action) (filed December 11, 1990).

On February 4, 1992, after the Stapleton-GMACM settlement in this case was approved by the circuit court, the AG action was settled. When the AG settlement is incorporated into the Stapleton-GMACM settlement, GMACM's future escrow practices will be as follows: (1) escrows of current mortgages using old FNMA/FHLMC forms will be calculated using a zero aggregate cushion, meaning the projected aggregate trial balance must fall to zero at some time during the year; and (2) escrows of old FHA/VA mortgages will use an individual item analysis with a one-month cushion, or a two-month aggregate override, whichever produces the lower escrow amount.

Second, GMACM agreed under the proposed settlement to refund to current mortgagors any surplus escrow amounts determined by using a two-month aggregate override. GMACM would include in the refund as compensation an amount of money equal to 5½% of the refund. Prompted by the Objectors at the final settlement hearing, the circuit court deleted the requirement that had existed in the proposed settlement that current mortgagors supply GMACM with a notarized claim form to obtain their refund. Now, under the final settlement approved by the circuit court, no claim form is required.

GMACM next agreed in the proposed settlement to pay the 202,000 closed mortgagors a sum of money calculated by using the following formula: .40 x (3.3 years) x (5½% interest) x (ending escrow

surplus). Under this formula, the .40 figure represents a litigation risk factor, and the 3.3 years figure pertains to the applicable statute of limitations period. Again, prompted by the Objectors, the circuit court deleted the requirement that past mortgagors file a notarized claim form. Now, under the final settlement approved by the circuit court, mortgagors with closed mortgages must submit only a claim form.

On June 4, 1991, the circuit court certified a class, gave preliminary approval to the proposed settlement agreement, and directed notice be provided to the class. Under the notice provision of the proposed settlement, GMACM mailed at its expense a court-approved notice form to current mortgagors and, using its computer records, to the 202,000 closed mortgagors. The notice form did not include a copy of the proposed settlement agreement, but did summarize its relevant provisions. The notice directed class members to read the settlement agreement for more information, a copy of which was obtainable through the circuit court. GMACM also twice-published the notice to the class in U.S.A. Today on July 8 and 15, 1991.

Of the 202,000 old mortgagors, less than 20% of the mailings were returned undeliverable. GMACM remailed, at its expense, over 5,000 notices which were returned with address corrections. Of the 590,000 potential class members, only eight members objected, and 26 members elected to opt out.

On August 8, 1991, the Objectors intervened in the instant action, objecting to the proposed settlement and moved the court to allow their March 1991 Federal class action suit against GMACM to proceed forward. The objections the Objectors asserted parallel the arguments they raise on appeal.

On August 19, 1991, the circuit court conducted a lengthy fairness hearing on the merits of the proposed settlement agreement. The court received evidence and oral argument from counsel of the class, GMACM, the Objectors and counsel for the class representative in Marquis v. G M A CM Mortgage Corp. (D. Minn.), No. 4—90—957 (filed Dec. 14, 1990), a class action suit making similar allegations to the present case. The court also had before it written briefs previously submitted by the parties. Of the parties present at the hearing, only the Objectors objected to the settlement; neither the AG attorneys nor the Marquis attorneys objected.

Following the hearing, the court received written briefs from Stapleton, the Objectors and GMACM. Special briefs were also received on the Objectors' allegation that a recovery under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 (1988) *et seq.*, would greatly enhance any damages awarded to the class.

On September 27, 1991, the circuit court entered its "Order of Settlement Approval, Dismissal and Final Judgment." The court in this order overruled the Objectors' objections and gave final approval to the proposed settlement, with the only modifications being the less demanding claim filing requirements. The court expressly found the settlement to be "fair, reasonable and adequate to the class" and that Stapleton fairly and adequately represented the class members. The court retained jurisdiction over the case to administer and enforce the terms of the settlement. The Objectors bring this appeal from the court order approving the settlement.

■ The procedural and substantive standards governing class action settlement hearings are well settled. The standard used by the courts in evaluating a compromise is that the proposal must be fair and reasonable and in the best interest of all those who will be affected by it. (*People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 316, 335 N.E.2d 448, 455; *Gowdey v. Commonwealth Edison Co.* (1976), 37 Ill. App. 3d 140, 150, 345 N.E.2d 785, 793.) Since the result is a compromise, the court in approving it should not judge the legal and factual questions by the same criteria applied in a trial on the merits. (*People ex rel. Wilcox*, 61 Ill. 2d at 316, 335 N.E.2d at 455.) Nor should the court turn the settlement approval hearing into a trial. To do so would defeat the purposes of a compromise such as avoiding a determination of sharply contested issues and dispensing with expensive and wasteful litigation. *People ex rel. Wilcox*, 61 Ill. 2d at 316-17, 335 N.E.2d at 455.

■ Although review of class action settlements necessarily proceeds on a case-by-case basis, certain factors have been consistently identified as relevant to the determination of whether a settlement is fair, reasonable and adequate: (1) the strength of the case for plaintiffs on the merits, balanced against the money or other relief offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed. *City of Chicago v. Korshak* (1990), 206 Ill. App. 3d 968, 971-72, 565 N.E.2d 68, 70, citing *Armstrong v. Board of School Directors* (7th Cir. 1980), 616 F.2d 305, 314.

■ On appeal, a reviewing court will intervene only upon a clear showing that the trial court was guilty of an abuse of discretion. (*People ex rel. Wilcox*, 61 Ill. 2d at 316, 335 N.E.2d at 455; *Korshak*, 206 Ill. App. 3d at 971-72, 565 N.E.2d at 70.) Stated otherwise, a trial

court's approval of a settlement should not be overturned on appeal unless, taken as a whole, the settlement appears on its face so unfair as to preclude judicial approval. *Korshak*, 206 Ill. App. 3d at 972, 565 N.E.2d at 70; *Gowdey*, 37 Ill. App. 3d at 149-50, 345 N.E.2d at 793.

■ In this case, the Objectors make numerous allegations as to why we should disturb the circuit court's approval of the settlement. For purposes of brevity, the Objectors' allegations will be categorized and discussed under the appropriate *Korshak* factor. We now turn to a discussion of each *Korshak* factor.

The first *Korshak* factor balances a plaintiff's likelihood of success on the merits against the relief offered in the settlement. The Objectors make their most strenuous argument under this factor.

The Objectors initially argue that the necessary balancing required by this *Korshak* factor is not present in the circuit court's final order approving the settlement. The Objectors next argue that the class has a high likelihood of success on the merits of its action because GMACM's escrow practices were in clear violation of the standard form contracts and RESPA, and GMACM has no defenses to its conduct. Finally, the Objectors attack the relief offered the class by asserting that the class is receiving little in exchange for what it is relinquishing. The Objectors' criticism of the proferred benefits can be particularized as follows: (1) the class members are only being returned monies which GMACM wrongfully took in the first place; (2) the class members having current mortgages will prospectively pay greater monthly escrow payments than if the current mortgages were only enforced as written; (3) the settlement rewards GMACM's past illegal escrow practices and judicially rewards GMACM by allowing GMACM to collect excessive escrow monies in the future; (4) an estimated 30% of the class will receive no compensation for GMACM's past practices and, instead, will have their mortgages unilaterally changed for the future; and (5) if class members fail to file or properly file the claim form, GMACM retains its ill-gotten gains.

We find unpersuasive the Objectors' contentions under the first *Korshak* factor. We first disagree that reversal is required because the circuit court's order does not contain a discussion balancing the benefits and burdens of the settlement. The court was well advised by counsel on the settlement's terms and the potential risks facing the class if the litigation continued. Merely because the final order omits a balancing discussion does not mean the court approved the settlement without weighing the benefits and burdens of the settlement to the class.

Next, we disagree with the Objectors' assertion that the class' likelihood of success on the merits is great while that of GMACM is small. Without expressing any opinion on the authority which GMACM cites to support its escrow practices under RESPA, the mere volume of that authority suggests that the class action may ultimately fail. This authority includes cases, official statements made by Housing and Urban Development officials (HUD) on the propriety of individual item analysis, HUD homeowner advisory booklets given to new homeowners, General Accounting Office interpretations of RESPA, and the industry-wide practice of individual item analysis. Regarding GMACM's escrow practices under the language of the individual contracts, the FHA contracts seemingly permit GMACM's escrow practices, and the FNMA/FHLMC forms do not on their face prohibit individual item analysis with a one-month cushion. In short, GMACM's authority and arguments on the propriety of individual item analysis present a serious risk to the class of litigating this case on the merits. We believe the circuit court was clearly entitled to consider this risk in assessing the overall fairness of the settlement.

We next disagree with the Objectors' claim that the benefits the class will receive under the settlement are *de minimis*. Regarding class members with current mortgages, GMACM's escrow practices in the future are designed to avoid the collection of excess reserves. The evidence produced at the hearing shows that a two-month aggregate override will produce a lower aggregate escrow amount than individual item analysis with a one-month cushion. Thus, the escrow amounts that GMACM will collect in the future will generally be less than what it collects presently.

Moreover, in light of the incorporation of the AG settlement, GMACM's future escrow practices will be even more limited. Under the old FNMA/FHLMC mortgages, which 42% of current mortgagors possess, GMACM will employ a zero aggregate cushion analysis. The evidence GMACM produced at the hearing demonstrates that this practice will, on average, operate more favorably than its previous accounting practice. Under the old FHA/VA mortgages, which encompass the remaining active mortgagors, mortgagors get the benefit of alternative formulas, one of which employs an aggregate override with a two-month cushion. Again, the average homeowner will benefit under this new formula.

Under the approved settlement, all new escrow formulas will be immediately implemented. Significantly, the circuit court has retained jurisdiction to administer and enforce the settlement, and Stapleton's

counsel has the right to monitor GMACM's escrow practices over the next three years.

In addition to GMACM changing its future escrow practices, GMACM will pay compensation to previous and current mortgagors. While the Objectors assert that these monies are nothing more than monies which GMACM wrongfully took in the first place, this assertion merely reiterates the Objectors' previous argument that GMACM's conduct was wrongful initially. Indeed, many of the Objectors' arguments which we previously particularized are premised on the assertion that GMACM was guilty of improper conduct and has no defenses to its conduct. As discussed above, GMACM's position in this lawsuit is not without authority and, thus, the risk does exist that the class will recover nothing if the case proceeds to trial. Again, the terms of the settlement must be measured within this context.

The second *Korshak* factor requires this court to analyze GMACM's ability to pay. No party disputes this factor.

The third *Korshak* factor is the complexity, length and expense of further litigation. As before, the Objectors assert that the suit against GMACM will resolve itself quickly and to GMACM's detriment. For the reasons discussed above, we do not find their argument persuasive.

The fourth and six *Korshak* factors are typically discussed together, and they are the amount of opposition to the settlement and the reaction of class members to the settlement. While the Objectors do not dispute the relatively minor negative reaction the proposed settlement received, they claim the class' reaction is merely a reflection of the fact that the class received inadequate notice of the terms of the settlement. The Objectors assert the following defects in the notice: class members were not informed of how any changed escrow formula would affect their individual escrow accounts in the future; that the class was not informed that only some members will receive compensation while others will not; and the amount of compensation each member would receive, if any.

We reject the Objectors' assertions. The circuit court reviewed the notice which the class was to receive, approved its contents and approved of how GMACM would effectuate the mailing. The notice informed the class that it merely summarized the settlement's provisions and that the exact terms of the settlement were available from the circuit court if desired. While the settlement did not include how each homeowner would be affected in particular, or how much compensation he or she would receive, our affirmance of the circuit court's finding of fairness diminishes any claimed deficiency in the no-

tice. Further, if any particular homeowner disliked the terms of the settlement, questioned its particular effect, or approved of how GMACM was currently handling his or her escrow account, he or she could opt out of the settlement. The fact that only 26 of 590,000 members elected to opt out is testimony that the notice adequately informed the class and that the class believes the settlement is fair.

The fifth *Korshak* factor is the presence of collusion in reaching the settlement. The Objectors assert that Stapleton's foreclosure prevents him from representing the class fairly, and that because Stapleton acquiesced in the terms of this allegedly unfair settlement, Stapleton cannot be representing the class vigorously. The Objectors also cite to Stapleton's receipt under the settlement of $2,000 for his service as class representative.

We affirm the circuit court's specific finding that Stapleton fairly and adequately represented the class. The fact that Stapleton is in foreclosure does not persuade us that he could not fairly and adequately represent the interests of the class. Stapleton's foreclosure is a neutral fact at best.

As for Stapleton's payment for his representing the class, such payments are not atypical in class action cases (*e.g., Bryan v. Pittsburgh Plate Glass Co.* (W.D. Pa. 1973), 59 F.R.D. 616 ($17,500 award to class representatives)) and serve to encourage the filing of class action suits. (See Krislov, *Scrutiny of the Bounty: Incentive Awards for Plaintiffs in Class Litigation*, 78 Ill. B.J. 286 (1990).) Finally, regarding Stapleton's acquiescence to the terms of this settlement, our affirmance demonstrates that Stapleton properly represented the class.

The seventh *Korshak* factor is the opinion of counsel. The Objectors assert that this court should give this factor little weight in light of the deficient advice Stapleton has received. We disagree.

Stapleton's counsel have filed two other mortgage escrow class action suits prior to their filing of the instant case. Counsel has also participated in numerous other class action suits during their professional careers. Aside from Stapleton's counsel approving the settlement, the Marquis counsel believes the settlement to be fair, and the AG counsel has not objected. The circuit court could appropriately resolve this factor against the Objectors.

The final *Korshak* factor is the stage of the proceedings and the amount of discovery completed. This factor is important because it bears directly on the ability of the trial court and Stapleton's counsel to evaluate the merits of the case and assess the reasonableness of the settlement.

On this factor, the Objectors assert that the trial court lacked critical facts pertaining to the monies GMACM collected, the monies GMACM will collect, how the changed escrow practices will effect individual mortgagors, how much money will be refunded, how much GMACM will retain in the event claim notices are not filed, who will and will not receive refunds, and the favored treatment GMACM received in exchange of the large deposits it made with the excess reserves it collected.

We believe that the circuit court was adequately informed. The size of the record in this appeal alone undermines the Objectors' argument that the circuit court lacked a proper basis upon which to base its decision. This record includes transcripts of the full-day hearing which the circuit court held, the parties' various submissions to the trial court, and the results of the Attorney General's two-year investigation into the escrow practices in question.

Moreover, the circuit court had before it representative accounts to determine how GMACM's past escrow practices worked and how they will effect the average homeowner in the future. While this account was theoretical, it demonstrates that the average class member will (1) benefit from the changed escrow accounting practices and (2) receive compensation for GMACM's past practices. It is worth reiterating that settlement hearings are not to be full trials on the merits. One of the principal purposes of an early settlement is to avoid costly and lengthy discovery. This is part of the exchange the parties make in achieving settlement. We accordingly reject the Objectors' arguments under this factor.

In summary, we affirm the settlement. After reviewing the record and the parties' arguments to determine whether the circuit court abused its discretion in approving the settlement, we conclude that no abuse of discretion has been shown.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.