64 F.3d 1171
 33 Fed.R.Serv.3d 457
 Gretchen DeBOER, and all others similarly situated, Plaintiff/Appellee,
v.
MELLON MORTGAGE COMPANY, a Texas corporation, Defendant/Appellee.
Michael Thomas Crehan; Suzanne Tetreault Crehan, Movants/Appellants.
 No. 94-2800.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 15, 1995.
Decided Aug. 30, 1995.
Rehearing Denied Oct. 25, 1995.
 
 Michael Thomas Crehan, Vienna, VA, argued, pro se (Suzanne Tetreault Crehan, Vienna, VA, on the brief), for appellants.
 Barry G. Reed, Minneapolis, MN, argued (Zimmerman Reed and Hart L. Robinovitch, Minneapolis, MN, on the brief), for appellee Gretchen DeBoer.
 Michael J. Bleck, Minneapolis, MN, argued (Mary E. Senkus and Jeffrey S. Haff, Minneapolis, MN, on the brief), for appellee Mellon Mortg.
 Before WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE,* Senior District Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 Objectors Michael T. and Suzanne T. Crehan appeal the district court's[1] orders certifying a class and approving a settlement in Gretchen DeBoer's class action suit against Mellon Mortgage Company. We affirm.
 
 I.
 
 2
 Mellon is one of the nation's largest servicers of mortgage loans. Although Mellon's escrow accounting practices have historically been accepted by the Department of Housing and Urban Development ("HUD"), they have been challenged in a number of suits as requiring too high an account balance. Escrow accounts typically are maintained to enable the servicer to pay taxes, insurance, and other expenses as they come due. When the loan servicer maintains excess cushion in an escrow account, the servicer essentially receives an interest-free loan from the customer on the excess amount. Maintaining some cushion, however, enables the servicer to pay off expenses as they accrue without dipping into corporate funds if the customer is delinquent in paying.
 
 
 3
 Mortgage servicers can account for escrow balances through either an aggregate or an individual-item analysis.[2] When aggregate accounting is used, the servicer estimates the balance for the whole account for the year, assuming that the borrower will make monthly payments equal to one-twelfth of the total disbursements. The monthly balances are then adjusted to reflect a lowest monthly trial balance of zero, and the amount of the cushion is then added. 24 C.F.R. Sec. 3500.17(d). When a servicer employs individual-item analysis for its escrow accounts, separate subaccounts are set up for each escrow item. Typically, these individual-item accounts generate more cushion than an aggregate account because the funds for one subaccount are unavailable to pay another subaccount as it comes due; thus requiring an adequate amount of cushion for each subaccount at all times. Neither the Federal National Mortgage Association ("FNMA") nor the Federal Housing Administration or Veterans Administration ("FHA/VA") mortgage forms disallows the use of individual-item analysis.
 
 
 4
 DeBoer filed her class action suit against Mellon in Minnesota state court in 1992, alleging a number of state law claims as well as a violation of section 10 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. Sec. 2609, which sets a ceiling on the amount of allowable cushion. The suit sought to enjoin Mellon "from requiring any mortgagor to establish or maintain in an escrow account an actual cushion in excess of the cushion authorized by the underlying mortgage contract or the RESPA ceiling, whichever is less." The suit also sought to force Mellon to adjust its escrow accounts to ensure compliance with that standard. In August 1993, the Crehans brought an independent suit against Mellon in the Eastern District of Virginia, asserting a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1961-1968, as well as numerous state law claims.
 
 
 5
 Following removal of the class action to the federal district court in September 1992, DeBoer and Mellon began negotiations and eventually came to a proposed settlement. The settlement would allow Mellon to employ individual-item analysis accounting in determining an estimate of escrow amounts necessary to pay items as they come due, with accrual completed in the month prior to disbursement. Mellon is also authorized under the settlement to maintain the maximum cushion allowed by law, regardless of the terms of a customer's mortgage instrument. The settlement requires Mellon to automatically refund excess escrow funds if they total more than $15, pay a class rebate for past charges, and pay $240,000 of the requested $290,000 in attorneys' fees. All individual suits against Mellon would be dismissed under the settlement, including any suit by the Crehans. Prior to the district court's approval of the settlement, the Crehans' Virginia action was dismissed for failing to state a federal cause of action, and during the pendency of this appeal that decision was affirmed by the Fourth Circuit in an unpublished opinion. Crehan v. Mellon Mtge. Co., 42 F.3d 1385, 1994 WL 689875 (4th Cir.1994) (table).
 
 
 6
 The settlement was submitted to the district court on October 27, 1993. Two days later the district court preliminarily certified the class for the purpose of the settlement and approved the notice of the settlement to be published to class members. On May 13, 1994, the district court held a hearing to consider objections. Five timely objections were filed out of an approximate class of 300,000, including the Crehans', and another six individuals timely noted their desire to be excluded from the class. On June 15, 1994, the settlement and attorneys' fees were approved, and on July 5, 1994, the Crehans were allowed to intervene for purposes of appealing the settlement. The Crehans challenge the substance of the settlement, the propriety of a class action to handle the claims against Mellon, their inability to opt-out of the class to pursue their individual claims, and several other points.
 
 II.
 A.
 
 7
 Management of class actions is governed by Rule 23 of the Federal Rules of Civil Procedure. The Crehans claim that the class fails to meet the certification prerequisites of Rule 23(a) because common questions of law or fact do not exist. The Crehans also claim that DeBoer does not present claims that are typical of the class and that DeBoer and class counsel have provided woefully inadequate representation of the class.
 
 
 8
 Commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question " 'linking the class members is substantially related to the resolution of the litigation.' " Paxton v. Union Nat'l Bank, 688 F.2d 552, 561 (8th Cir.1982) (quoting American Fin. Sys., Inc. v. Harlow, 65 F.R.D. 94, 107 (D.Md.1974)), cert. denied, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983). The Crehans claim that the differing types of mortgage contracts give rise to different claims that call for different treatment through subclasses. The fact that individuals with different mortgage forms will have RESPA or contract claims of differing strengths does not impact on the commonality of the class as structured, however. See Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir.1993) (commonality and typicality satisfied in challenge to pension calculations despite presence of four different pension plans). The main point of contention centers on Mellon's alleged over-escrowing of funds, and all members of the class are interested in a satisfactory common course of conduct in the future servicing of their loans, despite the fact that some class members have different mortgage contracts. This declaratory and injunctive nexus is sufficient to establish the requisite commonality. See Paxton, 688 F.2d at 561. Other class actions have also been maintained on similar bases. See, e.g., GMAC Mtge. Corp. of Pa. v. Stapleton, 236 Ill.App.3d 486, 177 Ill.Dec. 697, 603 N.E.2d 767 (1992), appeal denied, 148 Ill.2d 641, 610 N.E.2d 1262, 610 N.E.2d 1262 (1993). Nor does the nature of the proposed settlement alter this inquiry. In re GMAC Fuel Tank Liability, 55 F.3d 768, 795-96 (3d Cir.1995), petition for cert. filed, 64 U.S.L.W. 3017 (Jun. 28, 1995) (No. 94-2137).
 
 
 9
 Similarly, Rule 23(a)'s typicality requirement is satisfied. The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff. Paxton, 688 F.2d at 562. DeBoer's claims are typical of the remainder of the class given the nature of the injunctive relief sought. See Forbush, 994 F.2d at 1106. This typicality is not altered by the different mortgage instruments held by class members. The relief sought in the action is the same regardless of the amount of overage in any particular account. See Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir.) ("When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment."), cert. denied, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); see also Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir.1993) (typicality met despite varying fact patterns).
 
 
 10
 DeBoer and class counsel also appear to have fairly and adequately represented the class. There is no indication that DeBoer's interest was antagonistic to the remainder of the class or that the claims were not vigorously pursued. See Paxton, 688 F.2d at 562-63. The fact that the Crehans do not approve of the settlement terms does not, of itself, demonstrate that DeBoer and class counsel provided inadequate representation. To hold as much would require decertification any time an objection is raised to a class, certainly not the standard envisioned by Rule 23. "The adequacy of class representation ... is ultimately determined by the settlement itself." White v. National Football League, 41 F.3d 402, 408 (8th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995). In sum, the district court did not abuse its discretion in finding Rule 23(a)'s certification prerequisites satisfied. See Wright v. Stone Container Corp., 524 F.2d 1058, 1061 (8th Cir.1975).
 
 B.
 
 11
 The district court found the class properly certifiable under either Rule 23(b)(1) or (b)(2). The Crehans assert that certification of any class should have been under section (b)(3) so that the class members could opt-out of the settlement and pursue their claims individually. When either subsection (b)(1) or (b)(2) is applicable, however, (b)(3) should not be used, so as to avoid unnecessary inconsistencies and compromises in future litigation. See Reynolds v. National Football League, 584 F.2d 280, 284 (8th Cir.1978) (discussing (b)(1)); 7A Charles A. Wright et al., Federal Practice and Procedure Sec. 1772, at 425 (1986) (discussing (b)(1)); id. Sec. 1775, at 491 (discussing (b)(2)); id. Sec. 1777, at 521 (noting that "the privilege to opt-out of the action should be operable only when the class action is maintainable under [Rule 23(b)(3) ] alone").
 
 
 12
 Certification is appropriate under subsection (b)(2) if classwide injunctive relief is sought when the defendant "has acted or refused to act on grounds generally applicable to the class." Fed.R.Civ.P. 23(b)(2). In this case, the class sought such injunctive relief against Mellon's alleged over-escrowing practices. Therefore, certification under section (b)(2) was appropriate. See 7A Wright, et al., supra, Sec. 1775, at 470 ("If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)."). "The fact that [damages were] sought incidentally to the prayer for injunctive relief does not affect this result." Paxton, 688 F.2d at 563. Any potential unfairness to the Crehans in compromising their claims is "outweighed by the purposes behind class actions: eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation." Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 249 (3d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Because we find the class properly certifiable under section (b)(2) we need not address the applicability of section (b)(1).
 
 
 13
 Contrary to the Crehans' contentions, we are not presented with any due process problems in the composition of a mandatory class. In Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12, 105 S.Ct. 2965, 2974-75, 86 L.Ed.2d 628 & n. 3 (1985), the Supreme Court left open the question whether an absent class member in a suit for equitable relief could be precluded from seeking additional avenues of relief. When an objector submits to the court's jurisdiction, however, the Shutts dilemma is avoided. White, 41 F.3d at 407-08. Nor must we today decide the question whether a suit seeking equity can bind a putative class member, thus preventing a subsequent suit for damages, compare In re Colt Indus. Shareholders' Litig., 77 N.Y.2d 185, 565 N.Y.S.2d 755, 762, 566 N.E.2d 1160, 1167 (1991) (finding that due process precludes extinguishing the rights of an absent plaintiff to bring an action in damages in another jurisdiction) with Grimes v. Vitalink Comm. Corp., 17 F.3d 1553, 1560 n. 8 (3d Cir.) (concluding that due process protections "bind absent class members who had sufficient minimum contacts with the forum" even in the absence of an opt-out provision), cert. denied, --- U.S. ----, 115 S.Ct. 480, 130 L.Ed.2d 393 (1994), because the Crehans are not absent plaintiffs in this action.
 
 
 14
 In response to the notice of the proposed settlement, the Crehans noted their objections to being included within the settlement class, but they also took issue with the terms of the settlement. By submitting extensive memoranda to the district court on the issues of the fairness of the settlement, and again reaffirming their position to us on appeal, the Crehans have waived any potential due process requirement that would allow them to pursue their claims again in another forum. White, 41 F.3d at 407-08. Cf. In re Real Estate Title and Settlement Servs. Antitrust Litig., 869 F.2d 760, 770-71 (3d Cir.1989) (appearance to merely contest inclusion in class insufficient to waive personal jurisdiction complaint), cert. denied, 493 U.S. 821, 110 S.Ct. 77, 107 L.Ed.2d 44 (1989). The release entered into on their behalf[3] is thereby consistent with due process. See Grimes, 17 F.3d at 1564 (permissible for the class settlement to preclude later actions relying on different legal theories when those claims arise out of the same operative facts as presented in the settlement); see also Shutts, 472 U.S. at 808-12, 105 S.Ct. at 2972-75 (discussing the inherent due process protections in class action procedures, and the attendant lesser need for external protections of class plaintiffs). Essentially, the Crehans have had their day in court to point out the shortcomings of Mellon's practices and of the settlement on the merits, precisely what they requested in their briefs to this court. See Trans World Airlines, Inc. v. Mattox, 897 F.2d 773, 787 (5th Cir.) (jurisdictional objection waived when arguments go "to the heart of the issue before the district court"), cert. denied, 498 U.S. 926, 111 S.Ct. 307, 112 L.Ed.2d 261 (1990).
 
 
 15
 The Crehans also challenge the sufficiency of the notice of the proposed settlement. Notice of a settlement proposal need only be as directed by the district court, Fed.R.Civ.P. 23(e), and reasonable enough to satisfy due process. See Grunin v. International House of Pancakes, 513 F.2d 114, 120-22 (8th Cir.), cert. denied, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). Each class member was notified by mail and notice was also printed in a national publication. Although neither extensive nor remarkably thorough, we find the notice sufficient to comply with the strictures of due process. See Reynolds, 584 F.2d at 285; see also Maher v. Zapata Corp., 714 F.2d 436, 452 (5th Cir.1983) (notice "is not required to provide a complete source of settlement information"). The class received due notice of the proceeding and settlement proposal, and the Crehans were able to vigorously argue their position in their objections to the district court. "Due Process requires no more." Reynolds, 584 F.2d at 285.
 
 
 16
 Nor did the district court abuse its discretion in limiting the Crehans' intervention to an appeal of the settlement. The timing of the motion, coupled with the court's earlier findings as to the reasonableness of the settlement, serves to validate the court's ruling. See White v. National Football League, 822 F.Supp. 1389, 1432 (D.Minn.1993), aff'd, 41 F.3d 402 (8th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995).
 
 III.
 
 17
 "In approving a class settlement, the district court must consider whether it is 'fair, reasonable, and adequate.' " Van Horn v. Trickey, 840 F.2d 604, 607 (8th Cir.1988) (quoting Grunin, 513 F.2d at 123). The district court's assessment as to the reasonableness of a settlement "will not be overturned unless the party challenging the settlement clearly shows that the district court abused its discretion." Id. at 607; see Wiener v. Roth, 791 F.2d 661, 662 (8th Cir.1986) (per curiam). The district court noted the Crehans' objections, but issued cursory findings as to the fairness of the settlement. Although the district court's lack of more extensive findings is somewhat troubling, the Crehans do not strenuously complain about this fact because they assert that on its face the settlement is so lacking in value to the class that reversal is mandated. In the absence of specific findings regarding the fairness of the settlement, we must assume that the district court did not abuse its discretion unless the record establishes the contrary. See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 437, 88 S.Ct. 1157, 1169, 20 L.Ed.2d 1 (1968) (remand not necessary where "the record contain[s] adequate facts to support the decision of the trial court to approve the proposed compromises"). Accord In re Flight Transp. Corp. Sec. Litig., 730 F.2d 1128, 1136 (1984), cert. denied, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985). In such cases we should reverse the district court only if there is no basis upon which it could have found that the settlement is a reasonable one or if the settlement is improper as a matter of law.
 
 
 18
 Counseling strongly in favor of the settlement is the fact that the plaintiffs did not have a very strong case--they may not have even had a legitimate federal cause of action. The Circuits are split on the issue of whether section 10 of RESPA creates a private right of action. See State of Louisiana v. Litton Mtge. Co., 50 F.3d 1298, 1301-02 (5th Cir.1995) (no cause of action); Allison v. Liberty Savings, 695 F.2d 1086 (7th Cir.1982) (same). But see Vega v. First Fed. Savings & Loan Ass'n of Detroit, 622 F.2d 918, 925 n. 8 (6th Cir.1980). We need not decide whether such an action lies for purposes of this appeal, but we do note that the district court in this instance dismissed a case for precisely this reason during this same time frame, Michels v. Resolution Trust Corp., Civ. No. 4-93-1167, 1994 WL 242162 (D.Minn. April 13, 1994), and that a number of other district courts have also found no viable cause of action. See Litton Mtge., 50 F.3d at 1301-02 n. 14 (citing cases). In light of this fact, there was a strong unlikelihood of success, or, at best, a certainty of initial defeat followed by another round at the appellate level. Accordingly, virtually any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation.
 
 
 19
 The Crehans claim that because the Sixth Circuit in Vega is the only Circuit to have found a private cause of action under Section 10, class counsel was per se inadequate for failing to bring the case in that Circuit. We decline to accept the invitation to hold that forum shopping in an unsettled area of the law is an essential element of adequate representation. The summary affirmance of the dismissal of the Crehan's individual claims in the Fourth Circuit is an indication of the faint chance of success that existed with respect to the RICO and damage claims that the Crehans wish had been asserted. The other claims relating to individual-item analysis accounting faced a similarly difficult road given HUD's past acceptance of Mellon's escrow accounting practices. See Stapleton, 177 Ill.Dec. at 704, 603 N.E.2d at 774. The problems relating to the merits of the plaintiffs' claims strongly favor the settlement. See City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 (2d Cir.1974) (adequacy of settlement must be measured against "the strength of the case presented by the plaintiffs").
 
 
 20
 The Crehans claim that the class suit was based primarily on the desire to recover money damages and that the injunctive relief was unnecessary because the automatic refunding procedure to which Mellon agreed was already in place. Thus, according to the Crehans, the settlement is basically a sham that gives class counsel an undeserved windfall and the class plaintiffs nothing but a paltry sum in damages. Mellon and class counsel counter that the mandatory automatic refund procedure provides the major benefit to the class and will result in consumer savings in the millions of dollars. Mandatory automatic refunding is consistent with the injunctive relief sought in the initial complaint and settlement negotiations. The practice of automatically refunding escrow overages has historically been inconsistently followed by Mellon;[4] thus, requiring Mellon to hew to this procedure should provide some benefit to the class.
 
 
 21
 The Crehans claim further that the automatic refund provision is offset by the fact that Mellon can now hold higher balances in escrow; they also assert that prior to the settlement no account reserve was allowed for FNMA customers, whereas under the settlement Mellon may retain reserves. Interpretation of the contractual obligations is not so cut and dried as the Crehans would have us believe, see Stapleton, 177 Ill.Dec. at 704, 603 N.E.2d at 774; Attorney General v. Michigan Nat'l Bank, 414 Mich. 948, 325 N.W.2d 777 (1982), and the FNMA form does not require the automatic refunding that is now available to the class. Further, it is the time value of the refund we must consider against the time value of any potential additional escrow balance, not the dollar amount held in the account in absolute terms. The settlement does not allow Mellon to increase anyone's loan obligation.
 
 
 22
 " 'The very purpose of compromise is to avoid the delay and expense of ... a trial.' " Grunin, 513 F.2d at 124 (quoting Young v. Katz, 447 F.2d 431, 433 (3d Cir.1971)). Accordingly, while it is incumbent on the district court to determine the propriety of the settlement, it need not resolve all of the underlying disputes, see id. at 123, and the value of the settlement need not be determined with absolute precision. Additionally, the potential drain on the resources of both parties in discovery relating to Mellon's escrow records to verify its treatment of all its accounts provides an incentive to settlement. The parties to a class action are not required to incur immense expense before settling as a means to justify that settlement.
 
 
 23
 The views of the parties to the settlement must also be considered. As noted by the district court, class counsel is experienced in this type of litigation. See Armstrong v. Board of Sch. Dirs. of Milwaukee, 616 F.2d 305, 325 (7th Cir.1980) (noting that the views of counsel are to be accorded deference). The fact that only a handful of class members objected to the settlement similarly weighs in its favor. See Reynolds, 584 F.2d at 287; see also Grant v. Bethlehem Steel Corp., 823 F.2d 20, 23-24 (2d Cir.1987) (district court has a duty to the silent majority as well as the vocal minority). Having adduced no evidence of collusion other than their complaints as to the settlement terms, the Crehans have failed to raise an inference of bad faith in the negotiation process. It also warrants mention that a Magistrate Judge[5] presided over the settlement negotiations and that the district court had prior experience with this type of litigation. Such multiple layers of scrutiny further militate in favor of the settlement and against the Crehans' claims of collusion.
 
 
 24
 The award of attorneys' fees likewise does not constitute an abuse of discretion. The vast majority of the fee will be paid by Mellon and will not come out of any class recovery. The continuing nature of a permanent refunding procedure constitutes a benefit to the class adequate to justify the fee award.
 
 
 25
 The judgment is affirmed.
 
 
 
 *
 The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable Diana E. Murphy, then Chief Judge, United States District Court for the District of Minnesota, now United States Circuit Judge for the United States Court of Appeals for the Eighth Circuit
 
 
 [2]
 HUD has recently approved a new rule, effective May 24, 1995, requiring the use of aggregate accounting analysis. 24 C.F.R. Sec. 3500.17. This rule allows a three-year phase-in period for pre-existing accounts. See 24 C.F.R. Secs. 3500.17(b), (c)(4)(i); 60 Fed.Reg. 8812, 8813 (1995)
 
 
 [3]
 The release language is intended to prevent further litigation against Mellon on this matter and specifically mentions the Crehans' earlier-pending Fourth Circuit litigation
 
 
 [4]
 Mellon had engaged in such automatic refunding prior to 1990. This practice was eliminated from 1990 until 1992 and was reinitiated following the filing of this suit
 
 
 [5]
 The Honorable Jonathan Lebedoff, United States Magistrate Judge for the District of Minnesota