Eric BATES, et al., Plaintiffs,

v.

UNITED PARCEL SERVICE, et al., Defendants.

No. C99–2216 TEH.

United States District Court, N.D. California.

Nov. 1, 2001.

**442**

Alison M. Aubry, Esq., Rowena Gargalicana, Esq., Laurence W. Paradis, Esq., Disability Rights Advocates, Oakland, CA, Noah D. Lebowitz, Esq., Todd M. Schneider, Esq., Schneider McCormac & Wallace, San Francisco, CA, for Plaintiffs.

Paul J. Collins, Esq., Steven S. Kimball, Esq., Christopher J. Martin, Esq., Patricia S. Radez, Esq., Gibson Dunn & Crutcher LLP, Palo Alto, CA, for Defendants.

## ORDER

THELTON E. HENDERSON, District Judge.

These matters came before the Court on Monday, October 22, 2001, on Plaintiffs' motions for class certification under Federal Rule of Civil Procedure 23 and bifurcation of trial under Rule 42(b). After careful consideration of the parties' written and oral arguments, this Court GRANTS both motions for the reasons described below.

## BACKGROUND

Five plaintiffs—Eric Bates, Eric Bumbala, Bert Enos, Babaranti Oloyede, and Edward Williams—seek to represent a class of United Parcel Service (UPS) employees who "use sign language as a primary means of communication due to a hearing loss or limitation." Pls.' Mot. for Class Cert. at 1. They propose a nationwide class for claims under the Americans with Disabilities Act (ADA), 42

U.S.C. §§ 12101 *et seq.* (2001), and a California subclass for claims under the Fair Employment and Housing Act (FEHA), Cal. Gov't Code §§ 12940 *et seq.* (West 2001); the Unruh Civil Rights Act, Cal. Civ.Code §§ 51 *et seq.* (West 2001); and violation of California public policy, *see* Cal. Gov't Code § 12920 (West 2001) ("It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . physical disability. . . .").[1] UPS is the primary defendant, although Plaintiffs also name as defendants Does 1–20.

Plaintiffs present three main allegations, supported by declarations from fifteen putative class members. *See* App. A to Pls.' Mot. for Class Cert (containing sixteen such declarations, one of which was later withdrawn by the parties' stipulation). First, Plaintiffs observe that UPS requires all drivers to meet Department of Transportation (DOT) hearing standards, which the DOT only requires for drivers of vehicles weighing 10,001 pounds or more. Plaintiffs argue that this impermissibly precludes assessment of whether individual employees can perform the essential functions of the job. Second, Plaintiffs allege that UPS has failed to develop interactive policies to address the communication barriers faced by deaf workers in the workplace. As examples of such barriers, Plaintiffs assert that UPS frequently ignores requests for interpreters and often fails to provide video captioning, teletype telephones, and reliable emergency alert systems. Finally, Plaintiffs claim that UPS's failure to address communication barriers, in combination with the company's subjective personnel policies, has created an illegal glass ceiling for deaf workers.

In the two motions currently before this Court, Plaintiffs seek class certification under Rule 23 and bifurcation of trial under Rule 42(b). Plaintiffs first propose that the following class be certified:

---

1. Plaintiffs also allege two non-class causes of action. First, Plaintiffs Bates, Enos, and Oloyede bring a claim, on behalf of themselves and the general public in California, that Defendants have violated California laws regulating unfair business practices. *See* Cal. Gov't Code §§ 17200 *et seq.* (West 2001). Second, the same three Plaintiffs bring a claim for intentional infliction of emotional distress.

Those persons throughout the United States who (i) have been employed by and/or applied for employment with United Parcel Service (UPS) at any time since June 25, 1997 up through the conclusion of this action, (ii) use sign language as a primary means of communication due to a hearing loss or limitation, and (iii) allege that their rights have been violated under Title I of the Americans With Disabilities Act on account of UPS's policies and procedures.

Pls.' Mot. for Class Cert. at 1. Plaintiffs similarly seek to certify a subclass of "persons throughout California" who meet (i) and (ii) above and further "allege that their rights have been violated under California civil rights laws on account of UPS's policies and procedures." *Id.*

In a separate motion, Plaintiffs move for bifurcation of trial into two phases. The first proposed phase would address "General liability to the Class and equitable (Injunctive and Declaratory) relief issues," and the second phase would address "Named Plaintiff and Class damages." Pls.' Mot. for Bifurc. at 2. At oral argument, Plaintiffs clarified that the proposed second phase would also cover the two non-class claims in this action.

## DISCUSSION

### I. *Class Certification*

 A party seeking to certify a class must demonstrate that it has met all four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001). The party must provide facts to satisfy these requirements; simply repeating the language of the rules in its moving papers is insufficient. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir.1977). If a district court concludes that the moving party has met its burden, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

 Rule 23(c)(4) allows a court to maintain a class action as to particular issues only or to divide a class into subclasses. Fed. R.Civ.P. 23(c)(4). If the court divides the class into subclasses under Rule 23(c)(4)(B),

then "each subclass must independently meet the requirements for the maintenance of a class action." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982).

 In determining whether class certification is appropriate, a district court must conduct a "rigorous analysis" of the moving party's claims to examine whether the requirements of Rule 23 are met. *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The court may not consider whether the party seeking class certification has stated a cause of action or whether it is likely to prevail on the merits. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, the court is "at liberty" to consider evidence that relates to the merits if such evidence also goes to the requirements of Rule 23. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992).

UPS would have this Court extend *Hanon* beyond what the Court believes the Ninth Circuit intended. Through its written and oral arguments, UPS has made clear that it would like this Court to deny class certification based on a finding that UPS is in compliance with the ADA and therefore has not engaged in any pattern or practice of discrimination. Without question, this is the sort of merits-based inquiry that the Supreme Court rejected in *Eisen*. Notably, the *Hanon* court cited *Eisen* with approval as establishing that "a motion for class certification is not the appropriate point at which to resolve the merits of a plaintiff's claim." *Hanon*, 976 F.2d at 509 (citing *Eisen*, 417 U.S. at 177–78, 94 S.Ct. 2140). As another Northern District of California court observed when granting class certification in a case similar to this one,

A substantial amount of the defendants' papers and declarations address the merits of plaintiffs' claims, and argue that [defendants are] in full compliance with both the ADA and the Rehab Act. After a trial on the merits of plaintiffs' claims, this may turn out to be the case. However, at this stage of the litigation, the question is not the ultimate liability of [defendants], or

whether or not the [defendants have] attempted in good faith to provide the members of the proposed class with reasonable accommodations, but whether plaintiffs' claims are appropriate for class treatment....

*Siddiqi v. Regents of the Univ. of Cal.,* No. C99–0790 SI, 2000 WL 33190435, at *9 n. 3 (N.D.Cal. Sept.6, 2000). Similarly, this Court rejects UPS's contention that *Hanon* requires an in-depth analysis of the merits of this case.

This Court also rejects UPS's argument that such analysis is mandated by *Falcon.* In *Falcon,* the Supreme Court concluded that a single plaintiff's allegations of "specific discriminatory treatment" were not "sufficient to support an across-the-board attack" on an employer's practices. *Falcon,* 457 U.S. at 159, 102 S.Ct. 2364. As the Court noted, "there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds ... and (b) the existence of a class of persons who have suffered the same injury as that individual...." *Id.* at 157, 102 S.Ct. 2364. Here, by contrast, Plaintiffs have provided this Court with fifteen declarations from members of the proposed class who have allegedly suffered from the same discriminatory practices while employed at UPS. This is a far different posture than was presented to the Supreme Court in *Falcon.*

In short, the proper scope of inquiry at class certification requires this Court to determine, following a rigorous analysis, whether the proposed class meets the requirements of Rule 23. This does not mean, however, that the Court must rigorously analyze the merits of the underlying class claims. With this standard in mind, the Court now examines whether Plaintiffs' proposed class and subclass meet the requirements of Rules 23(a) and (b).

### A. *Rule 23(a)*

Rule 23(a) allows a class to be certified only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *see also Zinser* 253 F.3d at 1186. That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.

### 1. *Numerosity*

■■■ Numerosity under Rule 23(a)(1) does not require that joinder of all members be impossible, but only that joinder be impracticable. *Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 448 (N.D.Cal.1994); Fed.R.Civ.P. 23(a)(1). Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity. *Arnold,* 158 F.R.D. at 448. Rather, whether joinder is impracticable depends on the facts and circumstances of each case. *Id.*

Here, Plaintiffs have identified at least 460 potential members of the proposed nationwide class, *see* Jacobs Conf. Decl. Ex. A (Ex. A of Def.'s Second Am. Resp. & Obj. to Pls.' Interrogs., Set One), and over 40 potential members of the proposed subclass, *see id.* (unlabeled attachment to Def.'s [First] Am. Resp. & Obj. to Pls.' Interrogs., Set One).[2] In addition, the proposed class and subclass may include as-yet-unknown members because class membership extends "through the conclusion of this action." Pls.' Mot. for Class Cert. at 1. The proposed class also includes members who are scattered geographically throughout the nation. For these reasons, this Court finds that joinder would be impracticable, and the proposed class and subclass satisfy the numerosity requirement of Rule 23(a)(1).

---

**2.** Although UPS did not challenge numerosity in its written opposition, it asserted at oral argument that the proposed class only includes 7–10 identified individuals. However, this argument is premised on UPS's repeated assertion that it has generally complied with the ADA—i.e., a merits-based argument that this Court need not consider at this stage of the litigation.

## 2. *Commonality*

 Rule 23(a)(2) requires that common questions of law or fact exist among class members. Fed.R.Civ.P. 23(a)(2). The Ninth Circuit construes the commonality requirement under this rule "permissively," having noted that the requirement under Rule 23(a)(2) is less rigorous than that under Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998); *compare* Fed.R.Civ.P. 23(b)(3) (requiring that common questions of law or fact "predominate" in class actions maintained under this subsection) *with* Fed.R.Civ.P. 23(a)(2) (not including "predominate" or similar language in describing the general commonality requirement). It is sufficient for class members to have shared legal issues but divergent facts or, similarly, to share a common core of facts but base their claims for relief on different legal theories. *Hanlon*, 150 F.3d at 1019. Indeed, the Ninth Circuit considers the requirements for finding commonality under Rule 23(a)(2) to be "minimal." *Id.* at 1020.

Plaintiffs in this case allege that commonality is satisfied because the determination of class and subclass liability depends on common questions of fact and law. Plaintiffs offer the following as examples of such common questions: whether UPS's policy requiring an employee to pass DOT hearing standards to drive non-regulated-DOT vehicles violates the ADA or FEHA; whether UPS's failure to provide teletype telephones for class and subclass members, or its failure to provide such phones without request, constitutes unequal terms, conditions, and privileges of employment or otherwise violates the ADA or FEHA; whether the ADA or FEHA requires UPS to provide captions to all videos to make workplace information equally available and, if so, whether UPS has met its burden; whether UPS provides equal and adequate protection for class and subclass members who cannot hear auditory emergency alarms; whether UPS has failed to provide subclass members with full and equal accommodations, advantages, facilities, privileges, or services in violation of the Unruh Civil Rights Act; and whether UPS has created an illegal glass ceiling for deaf workers. *See* Pls.' Mem. of P. & A. in Supp. of Mot. for Class Cert. at 16–17; Pls.' Reply in Supp. of Mot. for Class Cert. at 5 (citing these and other questions as common to the class and subclass).

This Court finds that the presence of these and similar questions far exceeds the minimal requirements of commonality under Rule 23(a)(2). UPS attempts to defeat a finding of commonality by arguing that the ADA requires individualized analyses, making most disability cases unsuitable for class treatment.[3] However, this argument is misplaced. UPS apparently misunderstands the nature of Plaintiffs' suit. The ADA requires individualized analyses when determining what accommodations are required under the ADA and whether a particular individual even qualifies for protection under the ADA. *See, e.g., Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999). However, UPS does not contest that the proposed class members in this case qualify for ADA protection.[4] Moreover, Plaintiffs in this case do not challenge the accommodations provided to particular individuals. Rather, "at issue is the *process* that UPS follows in addressing (and failing to address) communication barriers and determining what jobs deaf workers can hold, not the specific outcomes that a valid process would produce for individual class members." Pls.' Reply in Supp. of Mot. for Class Cert. at

**3.** UPS also devotes a substantial amount of its briefing to arguing that the company is not in violation of the ADA or other disability laws and that Plaintiffs cannot demonstrate the pattern or practice of discrimination necessary to find liability. Again, these are merits-based questions that need not be resolved at the class certification stage.

**4.** As a result, this Court finds UPS's reliance on several cases denying certification of disability classes to be inappropriate. *See* Def.'s Opp'n to Mot. for Class Cert. at 7–8 (citing various cases in which courts have denied certification of proposed disability classes, but failing to note that certification was denied because the eligibility of individual class members for protection under the ADA was at issue in each case). *Cf. Siddiqi,* 2000 WL 33190435, at *6 (reaching the same conclusion as this Court); Pls.' Mem. of P. & A. in Supp. of Mot. for Class Cert. at 19–20 (citing a string of cases where courts have certified classes of individuals alleging discrimination based on disability).

1. Under these circumstances, a finding of commonality is warranted. *Cf. Walters v. Reno,* 145 F.3d 1032, 1046 (9th Cir.1998) (INS case explaining that a common allegation of illegal procedures is sufficient to find commonality, even when subsequent complex individualized proceedings will be necessary to resolve individual class members' claims); *Arnold,* 158 F.R.D. at 448 (disability case noting that the alleged existence of common discriminatory practices satisfies commonality even when the alleged practices affect each class member in a different manner).

UPS further asserts that the decentralized nature of UPS's decision-making with respect to promotions prevents a finding of commonality on the glass ceiling issue. *See Abram v. United Parcel Serv. of Am., Inc.,* 200 F.R.D. 424 (E.D.Wis.2001) (denying certification of a class of African–American UPS supervisors alleging racial discrimination in setting compensation levels in part because of UPS's decentralized decision-making on promotions). However, this Court does not find the *Abram* decision persuasive. First, the *Abram* court gave considerable weight to evidence demonstrating that no consistent pattern of lower pay existed among proposed class members. *See id.* at 431 (observing that there were almost as many UPS districts where African–American supervisors earned more than their white counterparts as vice-versa); *id.* at 432 (finding that UPS's decentralized decision-making "argues against a finding of commonality" in combination with other factors, "especially the lack of a consistent pattern of lower pay for African–Americans"). Here, by contrast, there is no suggestion that deaf workers have been given preferred treatment in any of UPS's districts.

Second, and more importantly, the plaintiffs in *Abram* based their claims solely on UPS's subjective evaluation policies. In this case, however, Plaintiffs allege the existence of an illegal glass ceiling based on other factors as well, including the unequal dissemination of information about promotions to deaf and hearing-impaired workers. Thus,

Plaintiffs' glass ceiling claim is intertwined with their claims based on UPS's alleged failure to address communication barriers. The common questions of law and fact related to those claims are more than sufficient to satisfy the Ninth Circuit's minimal commonality requirements. *See supra* at 11–12 (noting examples of common questions); *cf. Morgan v. United Parcel Serv. of Am., Inc.,* 169 F.R.D. 349, 356 (E.D.Mo.1996) (rejecting argument that UPS's subjective, decentralized decision-making prevented certification of a class of African–American UPS managers alleging racial discrimination in promotions and compensation).

### 3. *Typicality*

 Similar to its interpretation of Rule 23(a)(2) commonality, the Ninth Circuit interprets Rule 23(a)(3) typicality permissively. *Hanlon,* 150 F.3d at 1020. Typicality requires that named plaintiffs be members of the class they represent and "possess the same interest and suffer the same injury" as class members. *Falcon,* 457 U.S. at 156, 102 S.Ct. 2364 (citation omitted). The named plaintiffs' claims need not be identical to the claims of the class to satisfy typicality; rather, the claims are typical if they are "reasonably co-extensive with those of absent class members." *Hanlon,* 150 F.3d at 1020. It is sufficient for plaintiffs' claims to "arise from the same remedial and legal theories" as the class claims. *Arnold,* 158 F.R.D. at 449.

Here, Plaintiffs propose five named plaintiffs for the class and subclass: Eric Bates, Eric Bumbala, Bert Enos, Babaranti Oloyede, and Edward Williams. All are members of the proposed class, and Bates, Enos, and Oloyede are members of the proposed subclass. In addition, all have allegedly suffered from the same allegedly illegal policies and practices applied by UPS to the class as a whole.

UPS contends that none of the proposed named plaintiffs is a suitable class representative on the driver or promotions claims.[5]

---

**5.** At oral argument, UPS represented to the Court that it raised both of these contentions in its written opposition, and that Plaintiffs failed to respond to either contention in their reply brief.

However, the Court can find no reference in UPS's opposition brief to the argument that none of the proposed named plaintiffs would be a suitable class representative on the driver claim.

However, Plaintiff Oloyede is a suitable representative on the driver claim, and Plaintiff Williams may appropriately represent the class on the promotions claim. *See* Oloyede Decl. ¶ 10 (declaring that Plaintiff inquired about becoming a driver for UPS and was told that his hearing disability made that impossible); Williams Decl. ¶ 8 (declaring that Plaintiff asked his UPS supervisor about promotion opportunities and was told that his hearing impairment would prevent him from becoming a supervisor).

More generally, UPS contests typicality on the same grounds that it contests commonality—namely, that Plaintiffs' claims cannot be typical of the class claims because of the individualized nature of ADA determinations. As noted in the previous section, these arguments are inapposite since Plaintiffs' claims focus on UPS's alleged systemic failure to comply with the ADA, not on any alleged failure to provide specific accommodations in individual cases.[6] Thus, just as it finds commonality to be satisfied by the proposed class and subclass, this Court finds that typicality is also satisfied.

### 4. *Adequacy*

■ The fourth and final Rule 23(a) requirement—adequacy—requires (1) that the proposed representatives do not have conflicts of interest with the proposed class and (2) that the representatives are represented by qualified counsel. *Hanlon*, 150 F.3d at 1020; *Walters*, 145 F.3d at 1046. The Court finds that both of these prongs are satisfied in this case. First, the proposed named plaintiffs have no interests that are in conflict with the interests of the proposed class or subclass; all seek to remedy policies and practices at UPS that allegedly discriminate illegally against the hearing disabled. Second, Plaintiffs have submitted declarations that sufficiently establish their counsel's abilities to handle a case of this nature. Paradis

Decl.; Schneider Decl. Therefore, Plaintiffs have met their burden of demonstrating adequacy under Rule 23(a)(4).

### B. *Rule 23(b)(2)*

·■ Having found that the proposed class and subclass satisfy the requirements of Rule 23(a), the Court must now consider whether the class and subclass fit into one of Rule 23(b)'s categories of maintainable class actions. *See Zinser*, 253 F.3d at 1186. Rule 23(b) provides for the maintenance of several different types of class actions. Fed.R.Civ.P. 23(b). Plaintiffs seek to certify the class under Rule 23(b)(2), which allows a class to be certified if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). For a class to be certified under Rule 23(b)(2), "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole," even if not all class members have been injured by the challenged practice. *Walters*, 145 F.3d at 1047.

Plaintiffs assert that the proposed class and subclass meet the requirements of Rule 23(b)(2) because "UPS has discriminated against the proposed classes by imposing facially discriminatory policies and failing to develop and implement policies and procedures that comply with the ADA and California laws." Pls.' Mem. of P. & A. in Supp. of Mot. for Class Cert. at 25. UPS attempts to defeat certification by arguing that Plaintiffs cannot establish the existence of discriminatory patterns or practices at UPS. However, as with many of UPS's arguments, this argument goes to the merits of the case and will not be considered by this Court at the class certification stage. *See Eisen*, 417 U.S. at 178, 94 S.Ct. 2140; *see also* 7A Charles Alan

---

On the promotions claim, UPS apparently failed to notice Plaintiffs' response. *See* Pls.' Reply in Supp. of Mot. for Class Cert. at 14–15 (naming Plaintiff Williams as an adequate class representative for the glass ceiling issue).

**6.** UPS also argues that typicality must be denied because UPS's defenses to Plaintiffs' claims are

unique. This argument is invalid for the same reasons as discussed above: Defenses to individual allegations of failure to provide reasonable accommodations might be unique to individual plaintiffs, but defenses to allegations of systemic discrimination are common to the class.

Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1775 (2d ed. 1986) ("Further, an action properly may be brought under Rule 23(b)(2) in situations in which defendant contests the allegation that his conduct towards the class has been discriminatory. The fact that there is a factual dispute concerning whether the requirement that defendant acted on grounds generally applicable to the class is satisfied will not bar class certification."). Similarly, this Court need not consider UPS's argument that its use of DOT hearing standards "is an entirely lawful choice," Def.'s Opp'n to Mot. for Class Cert. at 23. Whether requiring drivers to meet DOT hearing standards violates the ADA or California law is a merits-based question that this Court will not address at this stage of the litigation.

UPS further argues, relying heavily on a single district court case, that the proposed class cannot be certified because Plaintiffs have not pointed to a "specific" or "easily identifiable" policy. *See Sokol v. New United Motor Mfg., Inc.*, No. C97–4211 SI, 1999 WL 1136683, at *4, 1999 U.S. Dist. LEXIS 20215, at *12–13 (N.D.Cal. Sept. 20, 1999). However, this Court refuses to read such a narrow requirement into the language of Rule 23(b)(2). Adopting UPS's position would lead to the unacceptable conclusion that an employer could protect itself from any class action suit simply by failing to adopt specific policies. That result seems particularly egregious in cases like this one, where plaintiffs claim that an employer's failure to adopt specific policies is the very reason that the employer is in violation of anti-discrimination laws. Moreover, the court that decided *Sokol* also appears to read the *Sokol* decision narrowly. In *Siddiqi*, the same court granted class certification on numerous claims, including claims that two university defendants failed to provide hearing-disabled students with sufficient access to teletype telephones and *"failed to adopt and implement a policy* requiring the use of closed captioning for video presentations during classes and other campus settings." *Siddiqi*, 2000 WL 33190435, at *3 (emphasis added). These are precisely the sorts of allegations Plaintiffs make in this case.

In short, this Court finds that the proposed class and subclass meet all four requirements under Rule 23(a) and are maintainable as class actions under Rule 23(b)(2). Plaintiffs seek relief from UPS's alleged pattern or practice of discrimination against employees with hearing disabilities, and this sufficiently satisfies Rule 23(b)(2)'s requirement that "the party opposing the class has acted or refused to act on grounds generally applicable to the class." Fed.R.Civ.P. 23(b)(2).

## II. *Bifurcation*

■ In addition to seeking class certification, Plaintiffs propose that the trial be bifurcated into two phases: a first phase to determine class liability and equitable relief issues, and a subsequent phase to address named plaintiff and class damages. A court may bifurcate any trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b). The district court has "broad discretion" to order separate trials under this rule. *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir. 1985). Factors to be considered when determining whether to bifurcate a trial include: avoiding prejudice, separability of the issues, convenience, judicial economy, and reducing risk of confusion. William W Schwarzer, et al., *Federal Civil Procedure Before Trial* § 16:160.4 (Rev. # 1 2001).

■ This Court agrees with Plaintiffs that bifurcating the trial into a liability phase followed by a damages phase would be appropriate. *Cf. Arnold*, 158 F.R.D. at 458–59 (observing that most courts bifurcate the liability and damages phases in employment discrimination class actions). First, the Court finds that no prejudice would result from bifurcation of trial. Next, despite UPS's arguments to the contrary, the issues of liability and damages are separable in this case. As explained earlier in this order, Defendants appear to misunderstand the nature of Plaintiffs' claims. Plaintiffs allege that UPS is liable to the class and subclass based on a pattern or practice of discrimination, not based on failure to make particular reasonable accommodations in individual

cases. Thus, liability, as well as what equitable relief would be appropriate should liability be found, depends on questions of law and fact common to the class and subclass; these questions relate to the policies and practices UPS has employed during the period in question and whether those policies and practices comply with the ADA and California laws. The appropriate level of damages, by contrast, depends on individualized questions, such as each class member's employment history, the particular communication barriers faced by each class member, and the accommodations UPS has provided to each class member. Each phase would therefore require the parties to present different types of evidence. UPS is simply mistaken when it argues that the evidence in the liability phase "must include" evidence of "each individual's need for accommodation, considering his or her particular limitations and essential job functions, what accommodations he or she was offered and how they were inadequate, if at all, what other reasonable accommodation was available, and the additional evidence of intent relevant to a determination of punitive damages." Def.'s Opp'n to Mot. for Bifurc. at 3–4. Such evidence is certainly necessary to evaluate damages, but it is not required to determine liability to the class or subclass. In short, this Court finds the issues of liability and damages to be separable in this case, a finding that weighs in favor of bifurcation.

The final three bifurcation factors—convenience, judicial economy, and reducing the risk of confusion—also weigh in favor of bifurcating trial. Because the issues of liability and damages are separable, it would be convenient to bifurcate. Moreover, reducing the types and amount of evidence to be produced in each phase of trial would promote judicial economy and reduce the risk of confusion. Judicial economy would be further promoted because bifurcation might eliminate the need to consider evidence of damages. If the first phase results in no finding of liability to the class by UPS, then the second phase to determine individual and class damages would become irrelevant.

All of the above indicates to this Court that bifurcation of trial as Plaintiffs propose would be practical, convenient, and efficient.

Consequently, this Court chooses to exercise its broad discretion to order separate trials under Rule 42(b).

## CONCLUSION

For the above reasons, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion for Class Certification is GRANTED.

a. The Court hereby certifies the following class under Federal Rule of Civil Procedure 23(b)(2): Those persons throughout the United States who (i) have been employed by and/or applied for employment with United Parcel Service (UPS) at any time since June 25, 1997 up through the conclusion of this action, (ii) use sign language as a primary means of communication due to a hearing loss or limitation, and (iii) allege that their rights have been violated under Title I of the Americans with Disabilities Act on account of UPS's policies and procedures. The class will be represented by the following named individual plaintiffs: Eric Bates, Eric Bumbala, Bert Enos, Babaranti Oloyede, and Edward Williams. Disability Rights Advocates and Schneider, McCormac & Wallace will serve as class counsel.

b. In addition, the Court certifies the following subclass under Rule 23(b)(2): Those persons throughout California who (i) have been employed by and/or applied for employment with United Parcel Service (UPS) at any time since June 25, 1997 up through the conclusion of this action, (ii) use sign language as a primary means of communication due to a hearing loss or limitation, and (iii) allege that their rights have been violated under California civil rights laws on account of UPS's policies and procedures. The subclass will be represented by the following named individual plaintiffs: Eric Bates, Bert Enos, and Babaranti Oloyede. The subclass will also be represented by Disability Rights Advocates and Schneider, McCormac & Wallace as class counsel.

2. Plaintiffs' Motion to Bifurcate is GRANTED. The trial will occur in two phases. The first phase will address class liability and equitable relief issues. The second phase will address individual and class

damages, if necessary, as well as Plaintiffs' two non-class claims.

3. Plaintiffs' and Defendant United Parcel Service's Motions to Strike are VACATED as moot. This Court did not rely on any of the contested evidence in reaching its decisions on the above two matters. It is therefore unnecessary for the Court to rule on whether any of the contested evidence should be stricken at this time.

**IT IS SO ORDERED.**