**OWNER–OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., and Marshall Johnson, Jerry Vanboetzelaer, Individually and on behalf of All Others Similarly Situated, Plaintiffs,**

v.

**NEW PRIME, INC., d/b/a/ Prime, Inc. and Success Leasing, Inc., Defendants.**

No. 97–3408–CV–S–1.

United States District Court,
W.D. Missouri,
Southern Division.

Feb. 25, 2002.

538

Daniel E. Cohen, The Cullen Law Firm, Washington, DC, Jerry Kirksey, Attorney at Law, Bolivar, MO, for plaintiffs.

James C. Sullivan, Richard M. Paul III, Shughart, Thompson, Kansas City, MO, for defendants.

## ORDER

WHIPPLE, Chief Judge.

Pending before the Court is Plaintiffs' Motion for Class Certification. Defendants

have filed suggestions in opposition and the Plaintiffs replied thereto. For the following reasons, the Court DENIES Plaintiffs' Motion for Class Certification.

## I. Background [1]

Plaintiffs are individual owner-operators who own or control truck tractors, and sometimes truck trailers for use in interstate transportation. Defendant New Prime, Inc., ("Prime"), is a motor carrier providing transportation services to the public under authority of the Department of Transportation ("DOT"). Defendant Success Leasing, Inc., ("Success"), is an alter-ego or affiliate of Prime which enters into lease-purchase agreements with independent owner-operators that lease, with the option to purchase, truck tractor units to the owner-operators.

Generally, owner-operators are independent contractors that lease their services and equipment to carriers authorized to transport goods by the DOT. The relationship between carriers and owner-operators and the lease that governs it are regulated by the federal government. Plaintiffs bring the pending action to recover damages for violations of the federal Truth–in–Leasing regulations codified at 49 C.F.R. § 376.12.

According to Plaintiffs' first amended class complaint, Plaintiffs entered into a contract called the "Service Contract" whereby the plaintiff owner-operator leased a truck tractor unit and driving services to defendant Prime for the transport of property. Plaintiffs contend that this is a lease to which the Truth–in–Leasing regulations apply. The plaintiff owner-operators were generally compensated on a per-load basis, and were entitled to percentage of the revenues paid to defendant Prime by shippers. The plaintiff owner-operator would receive his or her compensation in a "settlement check" on a weekly basis.

The Service Contract required owner-operators to furnish to defendant Prime a "Security Deposit" in the sum of $1,000.00 "as security for the full performance ... of all obligations under the contract." The Service Contract provided that defendant Prime was entitled to set-off against the Security Deposit any "reserve claims which [defendant Prime had] reason to believe should be rightfully charged to the [plaintiff owner-operators]." The Service Contract provided that the Security Deposit was forfeited if the plaintiff owner-operator did not comply with the provisions of the Service Contract requiring the return of licenses, placards and other authorizations within seven days of termination.

According to Plaintiffs, each plaintiff owner-operator then entered into a second agreement with either defendant Prime or defendant Success Leasing known as the "Lease Purchase Agreement." The Lease Purchase Agreement is a contract pursuant to which each plaintiff owner-operator leased from defendant Prime or defendant Success Leasing, with the option to purchase, one or more truck tractor units. The unit was to be used in providing services to "a trucking company approved [by one of the defendants]." The company to which services were provided was defendant Prime in every instance. The rental payments owing under the Lease Purchase Agreements were deducted directly from each plaintiff owner-operators weekly Service Contract settlement check. Plaintiffs maintain that the Lease Purchase Agreement is an "equipment purchase or rental contract" regulated by the Truth–in–Leasing regulations codified at 49 C.F.R. § 376.12.

Pursuant to the Lease Purchase Agreements, the plaintiff owner-operators are required to furnish funds for maintenance and repair which are maintained in the following accounts: an "Excess Mileage Rental Account"; a "Repair Reserve" and; a "Tire Replacement Reserve." The amounts to be deposited in these accounts are directly deducted from the plaintiff owner-operator's Service Contract settlement check. Plaintiffs maintain that these accounts constitute regulated escrow funds pursuant to the Truth–in–Leasing regulations.[2]

---

1. The Court accepts Plaintiffs' allegations as true in determining whether the proposed class should be certified. *See Clay v. Amer. Tobacco Co.,* 188 F.R.D. 483, 486 (S.D.Ill.1999).

2. The regulations define an "escrow fund" as

Under the terms of the Lease Purchase Agreements, if the agreement is terminated before the end of its term and the owner-operator does not purchase the truck equipment, the plaintiff owner-operator forfeits the money accumulated in all of the above-referenced escrow accounts. Furthermore, if the owner-operator completes the lease and does purchase the equipment, half of the "Repair Reserve" and "Tire Replacement Reserve" is forfeited.

In Count I of their complaint, Plaintiffs maintain that the Service Contract does not adequately specify the items defendant Prime will deduct from the plaintiff owner-operator's compensation at the time of settlement. Plaintiffs also complain that the Service Contract does not indicate how the amounts will be calculated. Plaintiffs maintain that the Service Contract violates 49 C.F.R. § 376.12(h) which reads as follows:

> Charge Back Items. The lease shall clearly specify all items ... ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item has been computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

49 C.F.R. § 376.12(h).

In Count II, Plaintiffs maintain that the Service Contract fails to reference the terms of the direct deduction for rental payments or escrow withholdings made pursuant to the Lease Purchase Agreement. Plaintiffs contend that this violates 49 C.F.R. § 376.12(i) which reads:

> Products, equipment, or services from authorized carrier. The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement. The lease shall specify the terms of any agreement in which the lessor is a party to equipment purchase or rental contract which gives the authorized carrier

the right to make deductions from the lessor's compensation for purchase or rental payments.

49 C.F.R. § 376.12(i).

In Count III, Plaintiffs allege that Defendants' direct deductions for escrow funds from the plaintiff owner-operators' Service Contract compensation and Defendants' retention and failure to return escrow funds are unlawful according to 49 C.F.R. § 376.12(k). That section states that if escrow funds are required under a lease, the lease must specify the following:

> (1) The amount of any escrow fund or performance bond required to be paid by the lessor to the authorized carrier or to a third party.
>
> (2) The specific items to which the escrow fund can be applied.
>
> (3) That while the escrow fund is under the control of the authorized carrier, the authorized carrier shall provide an accounting to the lessor of any transactions involving such fund. The carrier shall perform this accounting in one of the following ways:
>
> > (i) By clearly indicating in individual settlement sheets the amount and description of any deduction or addition made to the escrow fund; or
> >
> > (ii) By providing a separate accounting to the lessor of any transactions involving the escrow fund. This separate accounting shall be done on a monthly basis.
>
> (4) The right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time.
>
> (5) That while the escrow fund is under the control of the carrier, the carrier shall pay interest on the escrow fund on at least a quarterly basis. For purposes of calculating the balance of the escrow fund on which interest must be paid, the carrier may deduct a sum equal to the average advance made to the individual lessor during the period of time for which interest is

"[m]oney deposited by the lessor with either a third party or the lessee to guarantee performance, to repay advances, to cover repair expenses, to handle claims, to handle license and

State permit costs, and for any other purposes mutually agreed upon by the lessor and the lessee." 49 C.F.R. § 376.2(1).

paid. The interest rate shall be established on the date the interest period begins and shall be at least equal to the average yield or equivalent coupon issue yield on 91–day, 13–week Treasury bills as established in the weekly auction by the Department of Treasury.

(6) The conditions the lessor must fulfill in order to have the escrow fund returned. At the time of the return of the escrow fund, the authorized carrier may deduct monies for those obligations incurred by the lessor which have been previously specified in the lease, and shall provide a final accounting to the lessor or all such final deductions made to the escrow fund. The lease shall further specify that in no event shall the escrow fund be returned later than 45 days from the date of termination.

49 C.F.R. § 376.12(k)(1)-(6).

Plaintiffs allege multiple violations of § 376.12(k). The Service Contract does not authorize deductions from compensation or permit the retention of escrow funds following termination of the Service Contract. Furthermore, the Service Contracts do not reference the terms of the Lease Purchase Agreement giving Defendants the right to make deductions from the Service Contract compensation. The Service Contract does not specify the amount of any escrow fund required. The Service Contract does not specify the items to which the escrow funds will be applied. The Service Contract does not indicate that Defendants will provide an accounting of the escrow funds. The Service Contract does not specify the right of the plaintiff owner-operator to demand an accounting of the funds. There are no provisions specifying that Defendants will pay interest as set forth under § 376.12(k)(5). The Service Contract does not specify (i) any conditions upon which the escrow funds will be returned, (ii) that defendant Prime may deduct moneys for obligations incurred by the owner-operator which were specified in the lease when the escrow fund is returned and that the owner-operator is entitled to a final accounting and (iii) that in no event shall the escrow funds be returned later than 45 days following termination of the lease.

Plaintiffs allege that the Lease Purchase Agreements authorize the unlawful retention of escrow funds in excess of amounts needed to offset obligations incurred by Defendants on behalf of the owner-operator. Plaintiffs allege that the Lease Purchase Agreements violate 49 C.F.R. § 376.21(k)(6) because only one half of the escrow provisions are returned under certain circumstances. Additionally, the Lease Purchase Agreements provide for complete forfeiture of escrow funds if the lease is terminated prior to its expiration, if the owner-operator does not extend the lease, or if the lease is terminated during an extension before the lease expires. Plaintiffs allege that Defendants continue to hold escrow funds to which plaintiff owner-operators are entitled.

According to Plaintiffs, each class member's lease-purchase agreement and Service Contract is "substantively identical." Plaintiffs allege that there are in excess of 10,000 class members.

## A. Plaintiff Jerry Vanboetzelaer's Claim

Plaintiff Jerry Vanboetzelaer entered into a Lease Purchase Agreement with defendant Prime on February 20, 1993 for the purpose of leasing trucking equipment and at the same time entered into Service Contract whereby he leased that same equipment and his services to defendant Prime. Under the Service Contract, plaintiff Vanboetzelaer was required to deposit $1,000.00 with defendant Prime as security for performance. The Service Contract failed to disclose the deductions from compensation under the Lease Purchase Agreement.

Plaintiff Vanboetzelaer fulfilled his obligations under the agreements and exercised his right to purchase a trailer on February 16, 1996. He had paid $7,282.08 into the excess miles reserve fund, $2,886.17 into the tire reserve, and $20,183.69 into the repair reserve. Upon completion of the lease, defendant Prime returned to Plaintiff Vanboetzelaer the entire excess miles reserve fund but retained half of both the tire reserve and repair reserve as well as the $1,000 security deposit under the Service Contract.

## B. Plaintiff Marshall Johnson's Claim

On October 18, 1994, Plaintiff Marshall Johnson entered into an arrangement with defendant Success whereby defendant Success leased to plaintiff Johnson, with the option to purchase, trucking equipment. Simultaneously, plaintiff Johnson leased that equipment to defendant Prime under the terms of a Service Contract. The provisions of plaintiff Johnson's agreements that are at issue in this case were identical to those contained in plaintiff Vanboetzelaer's agreements.

On August 22, 1996, plaintiff Johnson's lease was cancelled by Defendants. He had paid $3,782.40 into the excess miles reserve fund, $1,035.57 into the tire reserve, and $12,127.04 into the repair reserve. Because this lease was terminated before completion, Defendants retained the entire amount contained in the escrow accounts in addition to the $1,000.00 security deposit.

## II. Analysis

The Court has wide discretion in determining whether to certify a class. *See White v. Nat'l Football League,* 41 F.3d 402, 407 (8th Cir.1994). The party moving for class certification has the burden of proof that all requirements for certification are satisfied. *See Bishop v. Comm. on Prof'l Ethics & Conduct of the Iowa State Bar Ass'n,* 686 F.2d 1278, 1288 (8th Cir.1982). The decision whether to certify a class is based on a rigorous analysis of the facts of a case. *See Gen. Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Courts do not inquire, however, into the merits of the underlying claims of the class representatives. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In determining whether to certify a class, the Court has the discretion to "probe behind the pleadings" before making the determination. *See Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

## A. Plaintiffs' Proposed Class Definition

Plaintiffs' first obligation is to adequately define the class. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1760 (2001) ("Although not specifically mentioned in the rule, an essential prerequisite of an action under Rule 23 is that there must be a 'class.' "). Plaintiffs move this Court to certify a class as follows:

> [A]ll independent truck owner-operators who have
>
> (1) entered into a lease-purchase agreement with either New Prime, Inc., ("Prime"), or Success Leasing, Inc. ("Success"), which purports to lease, with the option to purchase, trucking equipment from Prime or Success to the owner-operator, (2) then leased that equipment in service to motor carrier Prime under the terms of a "Service Contract" between Prime and the owner-operator, and (3) paid money into "reserve" and "security deposit" accounts retained by Prime or its affiliate Success.

Defendants argue that Plaintiffs' proposed class definition is unworkable for a variety of reasons.

First, Defendants argue that Plaintiffs' class definition is unworkable because it includes no date restrictions. Therefore, the class includes members whose claims have either expired under the applicable statute of limitations or predate the enactment of 49 U.S.C. § 14704, the statute creating the private right of action brought by Plaintiffs.

Since Plaintiffs filed their motion for class certification, the Court, in an order granting Defendants partial summary judgment, held that 49 U.S.C. § 14704 created a cause of action that cannot serve as the basis of claims that accrued before January 1, 1996, the effective date of the Interstate Commerce Commission Termination Act ("ICC-TA"). That holding effectively supplies the time limitation for Plaintiffs class and renders Defendants argument moot. Therefore, the Court will proceed to determine whether the class as defined is appropriate for certification.

## B. Does Plaintiffs' Class Satisfy the Prerequisites of Rule 23(a)?

Whether an action is appropriately maintained as a class action is determined by the

application of Federal Rule of Civil Procedure 23. The first task of the Court is to determine whether the proposed class satisfies the "prerequisites" enumerated in Rule 23(a). Rule 23(a) reads as follows:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

### 1. Numerosity

The first requirement of Rule 23(a) is that the proposed class be so numerous that joinder of all members is impracticable. *See* Fed.R.Civ.P. 23(a)(1). Although various factors determine whether joinder is impracticable, an extremely large number of class members alone can satisfy the requirement of numerosity. *See Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 574–75 (D.Minn.1995); 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.22[3][a] (3d ed.1997). Plaintiffs' proposed class consists of over 10,000 owner-operators located throughout the United States. Therefore, the Court finds that joinder would be impracticable, if not impossible, in this case.

### 2. Commonality

Rule 23(a) requires that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Rule 23(a)'s requirement of commonality is satisfied when a legal question linking the class members is "substantially related to the resolution the litigation." *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir.1995). It is important to note that a finding of "commonality" pursuant to Rule 23(a)(2) does not require a showing that the common issues predominate over individual issues. *See* Fed.R.Civ.P. 23(a)(2); *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 445 (N.D.Cal.2001);

*Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332, 338 (D.Minn.1999).

In the agreements executed by potential class members, the relevant lease provisions about which the Plaintiffs complain are substantially similar in all material aspects. Furthermore, the Court finds that Plaintiffs have alleged a common course of conduct on the part of Defendants that has purportedly violated the Truth–in–Leasing regulations. Thus, the common question linking members of the class is whether the Service Contract and the Leasing Agreement, contracts into which all class members entered, violate the Truth–in–Leasing regulations. This link between the members is sufficient to satisfy the commonality prerequisite of Rule 23(a)(2).

Defendants strenuously argue against this conclusion. Those arguments, however, will be addressed in this opinion as they apply to the predominance requirement of Rule 23(b)(3).

### 3. Typicality

Rule 23(a)'s typicality requirement is "fairly easily met so long as other class members have claims similar to the named plaintiffs." *DeBoer*, 64 F.3d at 1174. "[F]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

Defendants argue that Plaintiffs cannot satisfy the typicality prerequisite because potential class members may not have suffered any damages, i.e. they are not entitled to the return of escrow funds because of valid offsets or charges against the escrow funds exceeded the amount withheld. While this argument has merit, the Court finds that it is more appropriately addressed as part of the Rule 23(b)(3) analysis later in this order.

Furthermore, Defendants have counterclaimed for breach and claim an offset as to plaintiff Johnson. The Court finds that any variations between the claims of Johnson and potential class members is not sufficient to prevent Plaintiffs from satisfying the typicali-

ty prerequisite of Rule 23(a)(3). The Court finds that the claims of the potential class members arises from the same course of Defendants' conduct and gives rise to a claim under the same legal theory as the claims asserted by named plaintiffs. Therefore, the Court finds that Plaintiffs have satisfied the prerequisite of typicality under Rule 23(a)(3).[3]

### 4. Adequacy of Representation

■ The final prerequisite of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Requiring that the representative parties will fairly and adequately protect the interests of the absent class members insures the protection of the due process rights held by the absent class members. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 (11th Cir.1987); 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.25[1] (3d ed.1997). A proposed class satisfies this prerequisite if the following elements are met: "(1) that the plaintiff's attorney is qualified, experienced, and will competently and vigorously prosecute the suit, and; (2) that the interest of the class representative is not antagonistic to or in conflict with other members of the class." *Fielder v. Credit Acceptance Corp.*, 175 F.R.D. 313, 320 (W.D.Mo.1997).

Defendants do not dispute Plaintiffs' attorneys' qualifications or intentions, however, Defendants argue that the named Plaintiffs cannot adequately represent the interests of absent class members because their individual claims differ from those of the proposed class members. This argument is based on Defendants' allegation that plaintiff Johnson breached his agreements with Defendant and thus, is not entitled to escrow funds regardless of the legal validity of Plaintiffs' claims. The Court finds this argument unpersuasive. While plaintiff Johnson may be subject to a counterclaim for breach or he may not have suffered damages due to Defendants' con-

duct, it does not necessarily follow that his interests are in conflict with or antagonistic to the unnamed class members. The Court, therefore, finds that Plaintiffs and Plaintiffs' counsel would adequately represent the interests of the absent class members if this Court were to certify the proposed class.

### C. Can Plaintiffs' class be certified under Rule 23(b)?

If a proposed class satisfies the prerequisites of Rule 23(a) the Court still must find that a class action is the appropriate vehicle through which to resolve the litigation. *See* Advisory Committee notes to Rule 23. Rule 23(b) sets forth three situations in which a class action is appropriate. The relevant portions of Rule 23(b) read as follows:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular fo-

---

**3.** Defendants, in arguing that Plaintiffs claims lack typicality, assert that Plaintiff Owner–Operator Independent Drivers Association, Inc. ("OOIDA") lacks standing to serve as a class representative. The Court declines to address the argument. Regardless whether OOIDA is a proper class representative the other named Plaintiffs would suffice as class representatives. Furthermore, as demonstrated in this opinion, regardless whether OOIDA is a proper class representative, class certification is inappropriate.

rum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b). Plaintiffs seek class certification pursuant to subsection (b)(2) or, as an alternative (b)(3). The appropriate subsection under which to proceed is determined by the relief Plaintiffs seek.

### 1. Should the Court apply subsection (b)(2) or (b)(3) to Plaintiffs' Proposed Class?

■ Certification under subsection (b)(2) is only appropriate for classes seeking injunctive or declaratory relief. *See* Fed. R.Civ.P. 23(b).[4] According to the committee notes, this "subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." *See* Fed.R.Civ.P. 23(b) advisory committee's notes. The Supreme Court, in dicta, has called into question whether certification under Rule 23(b)(2) is ever appropriate when money is sought. *See Ticor Title Ins. Co. v. Brown,* 511 U.S. 117, 121, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994). The general rule at this point, however, is that monetary relief may be sought through a Rule (b)(2) class only if money damages are "merely incidental" to the requested injunctive relief. *See Smith v. Brown & Williamson Tobacco Corp.,* 174 F.R.D. 90, 100 (W.D.Mo.1997). Thus, whether the Court proceeds to analyze Plaintiffs' proposed class under Rule 23(b)(2) or Rule 23(b)(3) depends on whether the monetary relief sought by Plaintiffs is merely incidental to an overriding goal of injunctive relief.

According to their class complaint, Plaintiffs seek the following relief: (1) a declaratory judgment that Defendants' practices violate the Truth–in–Leasing regulations and an injunction preventing Defendants from violating the regulations in the future; (2) an accounting of all transactions and other activity related to the escrow funds; (3) the establishment of a common fund into which all unlawfully retained escrow funds and statutory interest will be deposited; (4) "disgorge-

ment" of the escrow funds wrongfully held by Defendants;(6) an injunction preventing Defendants from transferring, diverting or otherwise concealing class members' escrow funds and records pertaining thereto; and (7) reasonable attorneys' fees.

In determining whether money damages are incidental to injunctive relief and thereby the appropriate section under which to test certification, the Court need not remain blind to the "realities of the litigation." *In re School Asbestos Litigation,* 789 F.2d 996, 1008 (3d Cir.1986). The establishment of a fund into which retained escrow funds will be deposited, an injunction preventing the transfer of funds, and the ultimate disgorgement of the funds, all serve the ultimate goal of recovering money.

■ Furthermore, Plaintiffs characterize the monetary relief they seek as "disgorgement" of wrongfully held escrow funds. By their own estimate, the amount sought is equal to roughly $16 million. Although disgorgement is an equitable remedy, it does not qualify as injunctive relief. *See Pickett v. IBP, Inc.,* 182 F.R.D. 647, 656 (M.D.Ala. 1998); *Sugai Products, Inc. v. Kona Kai Farms, Inc.,* No. 97–00043.SPK, 1997 WL 824022 at *10 (D.Haw.1997). Thus, even characterized as disgorgement, the relief sought by Plaintiffs is not relief contemplated by Rule 23(b)(2). *See Taylor v. Flagstar Bank,* 181 F.R.D. 509, 519 (M.D.Ala.1998); *Pickett,* 182 F.R.D. at 657. The $16 million sought by Plaintiffs is not merely incidental to the injunctive relief sought.

■ In addition to the foregoing, courts have the discretion to consider whether a Rule 23(b)(2) class is necessary or whether the same relief could be afforded in an individual action. *See* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1785.2 (2001). In this case, it is clear that an injunction obtained by an individual class member would benefit the entire class, thus making class certification under Rule 23(b)(2) inappropri-

---

4. Rule 23(b)(2) was promulgated in 1966 to facilitate enforcement of civil rights legislation. *See* 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.43[1][a] (3d ed.1997). Class actions under Rule 23(b)(2), however, have been maintained outside the civil rights arena. *See id.* at § 23.43[1][c].

ate. *See id.* The Court, therefore, finds that the predominate relief sought in this case is money and thus, if any class is to be certified, it must be certified according to Rule 23(b)(3).

### 2. Is Plaintiffs' proposed class appropriate for certification under Rule 23(b)(3)?

Rule 23(b)(3) allows the Court to certify a class if the Court finds as follows:

> .... that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

### a. Do common questions of law and fact predominate?

Rule 23(b)(3) first requires that the common questions which satisfied the prerequisite of Rule 23(a)(2) predominate over any individualized issues. *See* Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3)'s requirement that questions common to the class predominate over other questions is a more stringent test than the commonality requirement of Rule 23(a)(2). *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 609, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Defendants argue that common questions do not predominate because the class members entered into different versions of the

contracts at issue, Defendants have compulsory counterclaims against class members for breached contracts, and the determination of whether a class member suffered damage would require an individualized inquiry thus preventing certification. Thus, Defendants argue, this action would require the resolution of various individualized issues which predominate over common ones.

■ The only argument the Court will address is Defendants' damages argument because, as will be set forth, the individualized issues relating thereto prevent certification of this class.[5] Plaintiffs bring the pending action pursuant to 49 U.S.C. § 14704(a)(1) & (2). Those sections provide as follows:

> (a) In general.—
>
> (1) Enforcement of order.... A person may bring a civil action for injunctive relief for violations of sections 14102 and 14103.
>
> (2)Damages for violations.—A carrier or broker ... is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

49 U.S.C. § 14704(a).

As set forth above in the above discussion regarding the nature of Plaintiffs' requested relief, Plaintiffs characterize the relief they seek as disgorgement of roughly $16 million in wrongfully withheld escrow funds. Disgorgement is not injunctive relief, *see Pickett,* 182 F.R.D. at 656; *Sugai Products,* 1997 WL 824022 at *10. It is unclear whether a private party can seek an order of disgorgement under 49 U.S.C. § 14704. The Court, however, interprets Plaintiffs request for disgorgement to be a request for money damages pursuant to 49 U.S.C. § 14704(a)(2). This interpretation is supported by the pleadings in the case to date. *See* Plaintiffs' Suggestions in Response to Defendants' Motion for Judgment on the Pleadings, Doc. # 116; Plaintiffs' Suggestions in Response to

---

5. The court would like to point out that much of Defendants' brief relates to what it contends are compulsory counterclaims. It is clear, however, that Rule 13 has no application in the class action context because unnamed class members are not considered "opposing parties" under that rule and thus, potential compulsory counterclaims can not serve as a barrier to class certification. *See Peterson v. United Accounts, Inc.,* 638 F.2d 1134, 1136 (8th Cir.1981); *Fielder,* 175 F.R.D. at 321 (same).

Defendants' Motion for Summary Judgment, Doc. # 76.

Thus if Plaintiffs are entitled to any damages, the statute pursuant to which they seek recovery is 49 U.S.C. § 14704(a)(2). That section gives only persons who have sustained damages as a result of a violation an action to recover from a carrier. Therefore, Defendants are not liable for failing to return funds if those funds are offset by amounts owed to Defendants or if the owner-operator did not terminate his or her lease with a positive balance in his or her escrow account.

If the Court were to certify this class, the Court would be required to make individualized determinations whether a class member suffered damage due to the lease terms about which Plaintiffs complain. The determination whether an owner-operator has a right to escrow funds would require an examination of individual drivers' accounts in an effort to determine whether, after termination of the lease, there remained a positive balance. Such an inquiry would necessarily entitle the Defendants to present individualized proof of offsets, advances and maintenance expenses charged to the owner-operators' accounts to determine whether any escrow funds remained to which the owner-operator may be entitled.

 Court's are not bound to certify a class if the determination of whether class members suffered actual damage requires presentment of individualized proof. Treatment of such an issue in a class action "presumes the ability to prove fact of damage without becoming enmeshed in individual questions of actual damage . . . . Where proof of fact of damage requires evidence concerning individual class members, the common questions of fact become subordinate to the individual issues . . . ." *Martino v. McDonald's System, Inc.*, 86 F.R.D. 145, 146 (N.D.Ill.1980). The Court finds that determining whether an individual class member had suffered damage would require examination of individualized proof and predominates over common issues. As a result, the Court will deny Plaintiffs' motion for class certification.

Plaintiffs point out that a similar class action has been certified in the United States District Court for the Southern District of Indiana. *See Owner–Operator Indep. Drivers Assoc. v. Mayflower Transit, Inc.*, 204 F.R.D. 138 (S.D.Ind.2001). In that case, the court certified a class of owner-operators seeking the return of "cash deposits" and/or fuel-tax moneys maintained in escrow accounts in excess of the 45 days following termination of a lease. *See id.* at 140. That court's order, however, was devoid of any discussion regarding the individual questions of actual damage. It is this consideration that leads this Court to respectfully disagree with the District Court for the Southern District of Indiana and hold that individualized issues prevent this case from being certified.

For the aforementioned reasons, the Court hereby DENIES Plaintiffs' Motion for Class Certification.

IT IS SO ORDERED.